Nenita S. VILLAR, Individually and as Personal Representative of Renerio Z. Villar, Deceased; Josephine Villar; Gerardo Villar; Reynaldo Villar, and Renerio Villar Jr., Plaintiffs,

v.

CROWLEY MARITIME CORPORATION; Crowley Maritime International, S.A.; Crowley Maritime International, S.A., d/b/a GTO Corporation, k/n/a WTO Corporation; Genstar Ltd., k/n/a Genstar Corporation; Fednav Ltd., successor in interest to Federal Commerce & Navigation; Ross Insurance Ltd., successor in interest to Genstar Overseas Ltd.; Ross Insurance Ltd., successor in interest to Genstar Overseas Ltd., d/b/a GTO Corporation, k/n/a WTO Corporation; Federal Pacific Ltd.; Federal Pacific Ltd., d/b/a GTO Corporation, k/n/a WTO Corporation; Saudia Arabian Transport Organization Ltd., Defendants.

Civ. A. No. H–91–0743.

United States District Court, S.D. Texas, Houston Division.

Jan. 7, 1992.

Gary M. Riebschlager, O'Quinn, Kerensky & McAninch, Houston, Tex., for plaintiffs.

Jack L. Allbritton, Fulbright & Jaworski, Houston, Tex., for defendants.

## ORDER

KENT, District Judge.

This matter is before the Court on the basis of three Motions: 1) the Joint Motion, brought by all Defendants save Crowley Maritime Corporation, to Dismiss for Want of Personal Jurisdiction; 2) the Motion of Crowley Maritime Corporation to Dismiss for *Res Judicata* and Forum Non Conveniens; and 3) Plaintiffs' Motion to Remand.

## PARTIES

This action arises out of the death of Renerio Z. Villar ("*Villar*"), a citizen of the Philippines. Mr. Villar drowned on or about March 5, 1977 while in the course of his employment as a crew member of the vessel *Bannock*. Plaintiffs allege that Defendants' negligence was the legal and proximate cause of Villar's death.

Plaintiff Nenita S. Villar is Villar's widow and personal representative. Plaintiffs Josephine Villar, Gerardo Villar, Reynaldo Villar and Renerio Villar Jr. are Villar's children. All Plaintiffs [1] are citizens of the Philippines.

Plaintiffs commenced this action against Crowley Maritime Corporation; Crowley Maritime International, S.A.; Crowley Maritime International, S.A. d/b/a GTO Corporation; Genstar Ltd.; Federal Commerce & Navigation; Genstar Overseas Ltd.; Genstar Overseas Ltd., d/b/a GTO Corporation; Federal Pacific Ltd.; Federal Pacific Ltd., d/b/a GTO Corporation; and Saudia Arabian Transport Organization Ltd.

Crowley Maritime Corporation (*"CMC"*) is a Delaware Corporation with principal place of business in California.

Defendants assert by affidavit, and Plaintiffs do not contest, that:

1) Crowley Maritime International, S.A. (*"CMI"*) is an inactive Panamanian corporation, and is also a wholly owned subsidiary of CMC.

2) As of the date of Villar's death, Genstar Ltd. was a Canadian Corporation. Subsequently, it became Genstar Corporation. In March, 1986, Genstar Corporation was acquired by Imasco Enterprises, Inc. following a public tender offer. Genstar Corporation has been in voluntary dissolution and wind up since December, 1986.

3) As of the date of Villar's death, Genstar Overseas Ltd. (*"Genstar Overseas"*) was a Bermuda Corporation and was wholly owned by Genstar International, S.A., a Luxembourg corporation. Genstar International, S.A., was subsequently wound up and merged with Ross Insurance Ltd. (*"Ross"*), a Bermuda Corporation. Ross is the successor in interest to Genstar Overseas.

4) Federal Pacific Ltd. ("Federal Pacific") is a Bermuda Corporation.

5) As of the date of Villar's death, GTO Corporation (*"GTO"*) was a Liberian corporation. GTO's stock was owned in equal percentages by CMC, Genstar Overseas, and Federal Pacific. In 1979 CMC acquired all of the stock in GTO and changed its name to WTO Corporation (*"WTO"*).

6) As of the date of Villar's death, GTO owned 60% of the stock of Saudi Arabian Transport Organization, Ltd. (*"SATOL"*), a Saudi Arabian corporation. The other 40% was owned by Yusuf Bin Ahmed Kanoo (*"Kanoo"*), a Saudia Arabian Corporation.

Finally, some confusion exists regarding the status of Federal Commerce & Navigation Ltd. and its relationship to Federal Pacific Ltd. Plaintiffs allege that Federal Pacific Ltd. was at all times a wholly owned subsidiary of Federal Commerce and Navigation Ltd. Defendants, however, assert through affidavit that, as of the date of Villar's death, Federal Commerce & Navigation Ltd. was a Canadian Corporation. Subsequently it was merged with Fednav Ltd., a Canadian Corporation. Fednav Corporation is now doing business as Federal Commerce & Navigation, a Division of Fednav Ltd. Federal Pacific Ltd. was, at all times, a wholly owned subsidiary of Fednav Ltd., not Federal Commerce & Navigation. In other words, Federal Pacific had no relationship of any kind with Federal Commerce & Navigation Ltd. until the latter was acquired by Fednav Ltd. This confusion, however, does not affect the outcome of the Court's decision.

CMC is doing business in Texas and maintains an agent for service of process. None of the other Defendants [2] maintains an agent for service of process in Texas.

## PROCEDURAL HISTORY

At the time of his death, Villar was employed by SATOL under an employment contract executed in the Philippines. Under this contract, in the event that Villar was injured in the course of his employment, he could choose to receive compensation under either Philippine worker's compensation law or the law of the country of

---

**1.** Hereinafter referred to collectively as "Plaintiffs."

**2.** Hereinafter referred to collectively as "Codefendants."

registry of the vessel he was assigned to. On the date of his death, Villar was working in Saudi Arabia as a crew member of the vessel *Bannock*, which was conducting a lighterage operation. The *Bannock* was registered under and flying the flag of Panama, and was in the service of SATOL. Villar drowned while attempting to secure *Barge 204*, which had broken loose from its mooring. *See Villar v. Crowley Maritime Corp.*, 782 F.2d 1478, 1479 (9th Cir.1986); *Villar v. Crowley Maritime Corp.*, No. A046664, 1, 2 (Cal.Ct.App. Dec. 17, 1990).[3]

The Plaintiffs filed suit against CMC, GTO, SATOL, and several other corporations in the United States District Court for the Northern District of California. The court held that Philippine law was controlling and dismissed the action for forum non conveniens. The court, however, conditioned its dismissal on the Defendants' agreement to waive all jurisdiction, venue, and statute of limitations defenses as to any action brought by the Plaintiffs based on Villar's death and commenced in the Philippines within one year. The Ninth Circuit Court of Appeals affirmed.[4] *Villar v. Crowley Maritime Corp., supra*, 782 F.2d at 1479–83.

Plaintiffs, however, did not file suit in the Philippines. Instead, they filed an identical suit in California State Superior Court. That court dismissed based on the California doctrine of forum non conveniens, and the California Court of Appeals affirmed. *Villar v. Crowley Maritime Corp., supra*, No. A0446664 at 2.

Plaintiffs subsequently commenced this action, the third arising out of Mr. Villar's death, in the State District Court of Harris County, Texas. CMC removed to this Court alleging jurisdiction under 28 U.S.C. § 1332(a)(2). The Codefendants joined in this removal subject to any other defenses they may possess. CMC now moves to dismiss for *res judicata and forum non conveniens.* The Codefendants jointly move to dismiss on the ground that they are not subject to personal jurisdiction. Plaintiffs move to remand to state court on the ground that complete diversity is lacking and therefore removal was improper.

## DISCUSSION

### I. ORDER OF CONSIDERATION.

■ Plaintiffs argue that the Court must first address their Motion to Remand before considering Defendants' motions. Plaintiffs agree, however, that "the first order of business for the federal court is to determine its own jurisdiction." *Jones Store Co. v. Hammons*, 424 F.Supp. 494, 499 (W.D.Mo.1977) (quoting 1A Moore, Moore's Federal Practice, para. 0.169[1], at 557). To do this, however, the Court must consider at least the substance of the Codefendants' Motion to Dismiss.

■ Defendants removed to this Court pursuant to 28 U.S.C.A. § 1441(a) (West Supp.1991), on the ground that this Court could have exercised original diversity jurisdiction pursuant to 28 U.S.C.A. § 1332(a)(2) (West 1991 Supp.). However, complete diversity is not present in a suit between an alien and an alien corporation. *Chick Kam Choo v. Exxon Corp.*, 764 F.2d 1148, 1153 (5th Cir.1985). It is undisputed that Plaintiffs are citizens of the Philippines and that Codefendants are alien corporations. Thus, at first blush, this Court appears to lack subject matter jurisdiction.

Plaintiffs argue that this ends the Court's inquiry; *Chick Kam Choo* requires remand. In *Chick Kam Choo*, however, the plaintiffs were citizens of Singapore and one of the defendants was a Liberian corporation with its principal place of business in New Jersey. The defendants successfully argued that diversity does not exist in a suit between aliens. In the instant case, however, the Defendants do not argue that jurisdiction is proper because

---

**3.** The factual findings of the Ninth Circuit and the California Court of Appeals are *res judicata* for purposes of this action.

**4.** The Ninth Circuit affirmed the district court's decision that foreign law applied but did not determine whether the law of the Philippines, Saudi Arabia, or Panama was controlling. *Villar v. Crowley Maritime Corp., supra*, 782 F.2d at 1482.

complete diversity exists between Plaintiffs and all Defendants. Rather, they allege that complete diversity exists between Plaintiffs and CMC, and only CMC is subject to personal jurisdiction in Texas. Therefore, removal was proper because the Codefendants were fraudulently joined in an attempt to defeat diversity, an issue not addressed in *Chick Kam Choo.*

■ In general, the fraudulent joinder of a nondiverse party will not defeat removal if the removing party can prove "that there is 'absolutely no possibility' that the nondiverse defendant will be liable to plaintiff in state court." *Robinson v. National Cash Register Co.,* 808 F.2d 1119, 1123 (5th Cir.1987) (quoting *Green v. Amerada Hess Corp.,* 707 F.2d 201, 205 (5th Cir.1983), *cert. denied,* 464 U.S. 1039, 104 S.Ct. 701, 79 L.Ed.2d 166 (1984)). Normally, however, the removing party bears the burden of establishing federal jurisdiction. The court must evaluate all factual allegations and resolve all uncertainties in controlling substantive law in the light most favorable to the nonremoving party. The court must remand the action unless the removing party has established that the nonremoving party could not recover in state court. *Laughlin v. Prudential Ins. Co.,* 882 F.2d 187, 190 (5th Cir.1989).

■ In the typical fraudulent joinder case, a plaintiff attempts to destroy diversity, and thereby defeat removal, by bringing a state court action against both a resident and a nonresident defendant.[5] Since the nondiverse defendant is citizen of the forum state, there is no question that such defendant is subject to personal jurisdiction. Thus, to establish fraudulent joinder the removing party must demonstrate that the court lacks subject matter jurisdiction over the claim against the nondiverse defendant because the plaintiff could not possibly prevail, on the merits, in state court. This necessarily requires the court

to pass judgment on the substantive merits of the plaintiff's claim before the facts and legal issues are fully developed at trial, a difficult and uncertain task at best. *See, e.g., Nolan v. Boeing Co.,* 736 F.Supp. 120, 121–22 (E.D.La.1990).

The instant case, however, presents a different question. The Codefendants' fraudulent joinder allegations are unrelated to Plaintiffs' substantive claims. Instead, Codefendants argue that Plaintiffs cannot prevail in state court because they cannot establish personal jurisdiction over Codefendants. Thus, even if the Court first considers Plaintiffs' Motion to Remand, it must necessarily consider the substance of Codefendants' Motion to Dismiss, if not the actual motion itself.

■ In general, if a nonresident defendant contests the exercise of personal jurisdiction, the plaintiff is required to make a *prima facie* showing that personal jurisdiction exists. *Rittenhouse v. Mabry,* 832 F.2d 1380, 1382 (5th Cir.1987). Plaintiffs, however, argue that the Court should consider their Motion to Remand first, and, in so doing, should evaluate the Codefendants fraudulent joinder claims under a traditional fraudulent joinder analysis. In other words, the Court should remand the action unless the Codefendants can prove that there is no possibility that the Plaintiffs can establish personal jurisdiction over the Codefendants in Texas.

Recently, two district courts in this circuit have addressed this identical issue. In both *Nolan v. Boeing Co.*[6] and *Martino v. Viacao Aerea Riograndense, S.A.,*[7] an alien plaintiff or plaintiffs brought suit in Louisiana state court against a nonresident United States corporation, admittedly doing business in Louisiana, and an alien corporation. The United States corporation removed to federal district court, alleging fraudulent joinder based on lack of personal jurisdiction.

---

**5.** Removal is improper if complete diversity does not exist or if a defendant is a citizen of the forum. 28 U.S.C.A. § 1441(a)-(b) (West 1973 & 1991 Supp.).

**6.** 736 F.Supp. 120 (E.D.La.1990).

**7.** Civil Action No. 90–1883, 1991 WL 13886 (E.D.La.1991).

In both *Nolan* and *Martino*, the Court, relying on existing Fifth Circuit case law,[8] held that when presented with both a motion to remand and a motion to dismiss for lack of personal jurisdiction, the district court has the discretion to decide which to take up first. *Nolan v. Boeing Co., supra,* 736 F.Supp. at 122–23 (citing *Walker v. Savell, supra*); *Martino v. Viacao Aerea Riograndense, S.A., supra,* 1991 WL 13886, at *2 (citing *Schwegmann Bros. Giant Super Mkts, Inc. v. Pharmacy Reports,* Inc., 486 F.Supp. 606 (E.D.La.1980) (citing *Walker v. Savell, supra* )). Both courts then addressed the motion to dismiss first, granted it, and then denied the motion to remand. *Nolan,* 736 F.Supp. at 127, *Martino,* 1991 WL at *2.

This Court agrees with the decisions in *Nolan* and *Martino*. First, as noted above, the Court must necessarily address the personal jurisdiction question regardless of which motion is addressed first. Thus, judicial economy favors deciding the Motion to Dismiss at the outset.

Moreover, this Court is quite capable of determining whether the Codefendants are subject to personal jurisdiction in Texas. If they are, then the Court can simply grant Plaintiffs' Motion to Remand and the litigation can proceed in state court. On the other hand, if the Court grants Plaintiffs' Motion to Remand, without deciding the Motion to Dismiss, and the Defendants

prevail on their motion in state court, CMC, the remaining diverse Defendant, will, under applicable Fifth Circuit law, be *unable* to remove to this Court. *See Weems v. Louis Dreyfus Corp.,* 380 F.2d 545, 545–49 (5th Cir.1967); *Nolan v. Boeing Co., supra,* 736 F.Supp. at 123 n. 2. In other words, if the Court adopts Plaintiffs' view as to the order in which the motions should be decided, then, even if the Codefendants' joinder was wholly improper, the Plaintiffs may well succeed in keeping this action in state court unless the Court first considers the Motion to Dismiss.

## II. PERSONAL JURISDICTION

■ A court may exercise personal jurisdiction over a foreign defendant to the extent permitted by the long arm statute of the state in which it sits and the Due Process Clause of the Fourteenth Amendment. *Rittenhouse v. Mabry, supra,* 832 F.2d at 1383. The Texas long arm statute authorizes the exercise of jurisdiction over nonresident defendants who are "doing business" in Texas. Tex.Civ.Prac. & Rem. Code Ann. § 17.042 (Vernon 1986). The "doing business" section of the statute extends as far as the United States Constitution permits.[9] *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356–57 (1990); *U–Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760, 762 (Tex.1977), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978). *See also*

**8.** In *Walker v. Savell,* 335 F.2d 536, 538 (5th Cir.1964), the Fifth Circuit held that when presented with both a motion to dismiss for lack of personal jurisdiction and a motion to remand, the trial court may decide either motion first. In *Allen v. Ferguson,* 791 F.2d 611, 615 (7th Cir.1986), the Seventh Circuit limited *Walker* to those cases in which personal jurisdiction can never be obtained, as opposed to those cases where the lack of personal jurisdiction can be cured, such as where process is defective and the like. In the instant case, however, the Codefendants allege that personal jurisdiction can never be obtained over them in Texas. Thus, even under the more restrained *Allen* approach, it is appropriate for the Court to consider the Motion to Dismiss first. *See also Nolan v. Boeing Co.,* 736 F.Supp. 120, 123 (E.D.La.1990).

**9.** In *Hargrave v. Fibreboard Corp.,* the Fifth Circuit held that the statute's scope is limited in certain contexts, including those cases in which a plaintiff attempts to assert personal jurisdic-

tion over a foreign defendant based on the fact that a subsidiary is doing business in Texas. If the foreign defendant is beyond the literal reach of the statute, the court held, then the constitutional issues need not be addressed. 710 F.2d 1154, 1161 n. 4 (5th Cir.1983). *See also Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 491–92 (5th Cir.1974). While the *Hargrave* Court analyzed the issue under Texas law, more recent cases, however, have assumed that the Texas Statute extends to the limit of due process and have then applied the *Hargrave* analysis as part of the federal due process inquiry. *See Southmark Corp. v. Life Investors, Inc.,* 851 F.2d 763, 772 n. 15 (5th Cir.1988). Similarly, in *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356–57 (Tex. 1990), the Texas Supreme Court reaffirmed its holding in *U–Anchor Advertising Inc. v. Burt,* 553 S.W.2d 760, 762 (Tex.1977), that the long-arm statute extends as far as due process allows. Therefore, for purposes of this decision, the Court will assume that the statutory inquiry and the due process inquiry are identical.

*Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 491–92 (5th Cir.1974). Thus, in the instant case, the two questions are merged. The sole issue is whether this Court can constitutionally exercise personal jurisdiction over the Codefendants.

█ The Due Process Clause limits a court's power to exercise personal jurisdiction over a nonresident defendant. First, the defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940)). If such contacts exist, a Court may exercise personal jurisdiction provided that it would not be unfair to require the defendant to litigate in the forum state. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Dalton v. R & W Marine, Inc.,* 897 F.2d 1359, 1361 (5th Cir.1990).

### A. Minimum Contacts.

█ The minimum contacts analysis varies depending on the nature of the underlying claim. Two types of personal jurisdiction exist, specific and general. Specific jurisdiction is proper when the defendant has "purposefully directed" his activities toward forum residents and the injury complained of arises out of such activities. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–73, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). General jurisdiction is personal jurisdiction based on the defendant's "continuous and systematic" general business contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 & n. 9, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed.2d 404 (1984). In the latter situation, however, the forum state has no direct interest in the underlying dispute. Therefore, due process requires minimum contacts "of a more extensive nature and quality" than those required to establish specific jurisdiction. *Dalton v. R & W Marine, Inc., supra,* 897 F.2d at 1362. In the instant case,

the only question properly raised is whether this Court can exercise general personal jurisdiction over the Codefendants.

### 1. "Alter Ego" Doctrine

█ With one exception, discussed in more detail *infra,* Plaintiffs do not claim that the Codefendants are subject to general personal jurisdiction based on their own contacts with the State of Texas. Rather, Plaintiffs argue that, as subsidiaries of CMC, the Codefendants are the "alter egos" of CMC. Since CMC is admittedly doing business in Texas, both CMC and the Codefendants are necessarily subject to personal jurisdiction.

At the outset, Plaintiffs' arguments raise two troubling points. First, in the typical "alter ego" case, the plaintiff files suit against a subsidiary corporation in a forum in which the subsidiary is subject to personal jurisdiction. The plaintiff then attempts to assert personal jurisdiction over the parent corporation, which would otherwise not be subject to personal jurisdiction in that forum, on the grounds that the subsidiary is the "alter ego" of the parent. The instant case, however, is one step removed. Basically, Plaintiffs assert a direct cause of action against SATOL, Villar's employer. They then allege that SATOL and the other Codefendants which each had some interest, to a greater or lesser degree, in SATOL's activities, are all "alter egos" of CMC. They then attempt to assert personal jurisdiction over all the Defendants in Texas, where only CMC, not SATOL, is doing business.

More disturbing is the fact that Plaintiffs' jurisdictional arguments are entirely circular. On the one hand, Plaintiffs urge the Court to disregard the Codefendants' corporate status and look only to CMC's amenability to personal jurisdiction. On the other hand, Plaintiffs argue that the Court should recognize the Codefendants' as separate, alien corporations for purposes of determining subject matter jurisdiction. This argument is patently silly and exceeds the bounds of zealous advocacy. Either the Codefendants are the "alter egos" of CMC or they are not. They cannot be

considered "alter egos" for some purposes and separate corporate entities for others merely to suit the ends of Plaintiffs. *See Panalpina Welttransport GMBH v. Geosource, Inc.*, 764 F.2d 352, 354–55 (5th Cir. 1985) ("alter ego" doctrine may be used to add additional places of citizenship for diversity purposes, but party cannot pick and chose among places of citizenship; jurisdictional rules may not be used to perpetrate fraud on the court by either improperly creating or destroying diversity jurisdiction). *Cf. Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 906 (1st Cir. 1980) (noting that plaintiff could not argue that subsidiary corporation was "alter ego" of parent for personal jurisdiction purposes but that subsidiary, not parent, was "employer" for purposes of workers' compensation laws).

Leaving these deficiencies aside, however, it is clear that Plaintiffs' arguments as to the "alter ego" issue are without merit. First, it is well settled that "the mere existence of a parent-subsidiary relationship will not support the assertion of jurisdiction over a foreign parent...." *Dalton v. R & W Marine, Inc., supra*, 897 F.2d at 1363. Indeed, it is clear that:

> Proof of an identity of shareholders or of corporate directors and officers, or of domination by the parent of its subsidiary's affairs, will not justify treatment of the two as one business unit. Nor does the parent's ownership of 100 percent of the subsidiary's stock alone defeat their separate existence.

*Hargrave v. Fibreboard Corp., supra*, 710 F.2d at 1162 (quoting *Miles v. American Tel. & Tel. Co.*, 703 F.2d 193, 195 (5th Cir.1983)).

Rather, the party alleging the existence of personal jurisdiction must demonstrate that "the parent so dominates the subsidiary that 'they do not in reality constitute separate and distinct corporate entities.'" *Dalton v. R & W Marine, Inc., supra*, 897 F.2d at 1363 (quoting *Hargrave v. Fibreboard Corp., supra*, 710 F.2d at 1159). There are several factors to be used in evaluating whether this test is satisfied.

[S]uch factors include whether: (1) distinct and adequately capitalized financial units are incorporated and maintained; (2) daily operations of the two corporations are separate; (3) formal barriers between management of the two entities are erected, with each functioning in its own best interests; and (4) those with whom the corporations come in contact are apprised of their separate identity. Other factors deemed important by the commentators and Texas courts are: (1) common stock ownership; (2) the method and degree of financing of the subsidiary by the parent; (3) common directors or officers; (4) separate books and accounts; (5) common business departments; (6) extent to which contracts between parent and subsidiary favor one over the other; and (7) connection of parent's employee, officer or director to subsidiary's tort or contract giving rise to suit.

*Hargrave v. Fibreboard Corp., supra*, 710 F.2d at 1162–63 (quoting *Miles v. American Tel. & Tel. Co., supra*, 703 F.2d at 195–96).

### i. Plaintiffs' Argument.

■ Plaintiffs rely on *Castleberry v. Branscum*,[10] in which the Texas Supreme Court discussed the circumstances in which the corporate fiction should be disregarded to hold a parent corporation liable for the torts of its subsidiary. In particular, Plaintiffs focus on the Court's discussion of the different rationales for disregarding the corporate fiction. Plaintiffs appear to argue that in order to show that there is no possibility that a state court could exercise personal jurisdiction, the Codefendants must affirmatively negate each and every one of these possible rationales, regardless of whether there is any evidence that a particular rationale may be applicable to the instant case.

This suggestion is absurd. Even assuming that Plaintiffs are correct in their assertion that their Motion to Remand must be considered first, and that, to prevail on their fraudulent joinder claim the Code-

---

**10.** 721 S.W.2d 270 (Tex.1986).

fendants must show that there is no possibility that a state court could obtain personal jurisdiction, this is not the same as requiring the Codefendants to negate every *conceivable* basis for personal jurisdiction, even when the record contains no evidence whatsoever to support such a basis. *See Barrantes Cabalceta v. Standard Fruit Co.,* 667 F.Supp. 833, 836 (S.D.Fla.1987) (plaintiff must establish at least a colorable ground for its claims), *aff'd in part, rev'd in part,* 883 F.2d 1553 (1989).

For example, one rationale for disregarding the corporate fiction is that the fiction has been used "to achieve or perpetrate monopoly." *Castleberry,* 721 S.W.2d at 272. The record contains absolutely no evidence to suggest that any of the Defendants have used a corporate fiction to engage in monopolistic practices. Since the record contains no evidence of such activity, a court could not determine to disregard the corporate fiction on this basis. Codefendants are not affirmatively required to come forward with evidence to demonstrate their lack of monopolistic activities.

▅▅▅ Leaving this rather tortured argument aside, Plaintiffs primarily focus on those portions of the *Castleberry* decision which permit the corporate fiction to be disregarded where the fiction is used to perpetrate a fraud, evade a legal obligation, or justify a wrong. *Castleberry,* 721 S.W.2d at 272. Plaintiffs argue that

Defendants used their various corporate fictions to defraud and avoid legal obligations to Plaintiffs. In particular, Plaintiffs rely on the Affidavit and Supplemental Affidavit of John Runion ("*Runion Affidavit and Supplemental Affidavit*"). Mr. Runion claims to have analyzed all the relevant facts and applicable law and reached the conclusion that the Codefendants' corporate status should be disregarded for personal jurisdiction purposes. The Court finds the Runion Affidavit and Supplemental Affidavit to be both wholly improper and untrustworthy.[11] For present purposes, however, it is sufficient to note that, despite the length of the Runion Affidavit, Mr. Runion's entire argument can be boiled down to the startling conclusion that because SATOL and several of the other Codefendants have been merged with other entities and/or wound up since 1977, these steps were obviously undertaken to avoid an obligation to and/or to defraud Plaintiffs. In other words, Mr. Runion's conclusions amount to nothing more substantial than *post hoc ergo propter hoc.*

▅▅▅ Other than the fact that the mergers and windups occurred after Mr. Villar's injuries, the record is devoid of any evidence whatsoever that the two were related. Moreover, this argument is belied by the fact that, as part of the dismissal of the California federal action, the Defendants

---

**11.** Mr. Runion claims to be "an independent consultant, temporarily employed by Sovereign Energy, Inc. in the capacity of Technical Consultant Business Development." Moreover, he claims to have over 20 years of experience in domestic and international business. Be that as it may, nothing in the Runion affidavit suggests any reason why Mr. Runion is competent to advise this Court as to the interpretation and application of Texas law. As a Federal District Court sitting in Texas, this Court is routinely required to interpret and apply Texas law. The Court concedes that in particular cases, the testimony of a person intimately familiar with a particular area of Texas law might be appropriate. In the instant case, however, nothing suggests that such testimony is necessary. More importantly, even assuming the utility of such testimony, absolutely nothing suggests that Mr. Runion is in any way qualified to provide it.

Moreover, the Runion affidavit contains no facts to support its incredible conclusions. It does state some facts, such as that CMI is a

subsidiary of CMC, that GTO owned 60% of SATOL, and the like, but it does not explain the basis for its conclusion that these facts demonstrate that CMC exercised such complete dominion and control over the Codefendants that all should be considered the "alter egos" of CMC. Rather, it simply repeats the same conclusory allegations without ever explaining how they are supported by the facts. Indeed, it would appear that much of the Runion Affidavit is based on the premise that most of the Defendants' activities over the last ten years have been undertaken, not to pursue legitimate business ends, but to avoid a trial on the merits in this lawsuit. As noted above, this contention is without merit.

Finally, as noted below, it is clear that the Runion Affidavit contains blatant misrepresentations. Therefore, the Court explicitly finds that the Runion Affidavit and Supplemental Affidavit are not trustworthy and are entitled to no weight.

agreed to waive all procedural and jurisdictional defenses to a suit brought in the Philippines. In other words, far from trying to avoid or defraud Plaintiffs, the Defendants specifically agreed to appear and defend in the Philippines. *Defendants never defended this suit in the Philippines because Plaintiffs never filed suit there.*

Finally, after a careful examination of the record and the applicable case law, the Court is convinced that, as a matter of law, the Codefendants cannot be said to be the "alter egos" of CMC.

### ii. Facts

■■■■ Mr. Villar was working for SATOL. At the time of Villar's death SATOL was owned jointly by two entities. 40 percent was owned by Kanoo and 60 percent by GTO. Deposition of John Maguire, September 10, 1981, Exhibit I to Defendants' Opposition and Response to Plaintiffs' Motion to Remand ("*Maguire Deposition*") [12] at 10 ll.7–8. SATOL did not do business outside of Saudi Arabia. *Id.* at 73–74.

CMC has no interest in Kanoo, and has never had any such interest. *Id.* at 11 ll.9–10. GTO was one part of a much larger joint venture between CMI, Genstar Overseas and Federal Pacific. Each owned a ⅓ interest. *Id.* at 11 ll.20–25, 26 ll.5–7. CMI is a wholly owned subsidiary of CMC. There is no suggestion, however, that CMC has, or has had, any ownership interest in either Genstar Overseas or Federal Pacific.[13] *Id.* at 12 ll.1–15. Affidavit of Roderick MacKinnon, Exhibit E to Defendants' Opposition and Response to Plaintiffs' Motion to Remand; Affidavit of M–E. Chlumecky, Exhibit F to Defendants' Opposition and Response to Plaintiffs' Motion to

Remand. Thus, there is no evidence to support the contention that either Genstar or any of its subsidiaries or parent corporations or Federal Pacific or any of its subsidiaries or parent corporations were the "alter egos" of CMC.[14]

Moreover, it is clear from the record that CMC did not dominate either SATOL or GTO. First, at the time of Villar's death, CMC had, at best, a 20% ownership interest in SATOL.[15] Additionally, only two of SATOL's eight directors were connected with CMC. Two were provided by each of the corporations owning an interest in GTO, and two by Kanoo. McLean Deposition at 9 ll.15–28, 10 ll.1–3. *See also* Exhibit 1 to Maguire Deposition. Similarly, between 1976 and 1979 only three of GTO's seven directors were connected with CMC. Moreover, only two of these three directors appear to have had voting privileges. Maguire Deposition at 31–32. Each director was paid by the parent company that sponsored him. *Id.* at 36 ll.6–9. Moreover, actions could only be taken upon unanimous agreement, and CMC had no authority to override the dissent of any director, neither those it had dedicated nor those dedicated by Genstar or Federal Pacific. *Id.* 22 ll.4–16. Moreover, the record supports the Codefendants assertions that all the Codefendants maintained the formalities of incorporation and did not function solely as a conduit for CMC. *See* Maguire Deposition at 17 ll.23–25; Exhibits to Maguire Deposition. Additionally, SATOL had its own bank accounts in Saudi Arabia and San Francisco,[16] handled its own marketing,[17] maintained its own staff,[18] and had its own payroll. *Id.* at 53. No one at

---

**12.** All depositions cited were taken by Plaintiffs during the California litigation.

**13.** Moreover, the two are not related to each other. *Id.* at 12 ll.12–15. Additionally, the *Bannock* was dedicated to the joint venture by Federal Pacific or one of its subsidiaries, not by CMC. Maguire Deposition at 92; Deposition of William McLean, June 11, 1982, Exhibit K to Defendants' Opposition and Response to Plaintiffs' Motion to Remand ("*McLean Deposition*") at 70.

**14.** Moreover, the company that actually hired Mr. Villar was owned by Federal Pacific, not by

CMC. Deposition of George A. Watkins, June 11, 1982, Exhibit J to Defendants' Opposition and Response to Plaintiffs' Motion to Remand ("*Watkins Deposition*").

**15.** Subsequently GTO was acquired by CMC and became WPO. Maguire Deposition at 10 ll.18–27, 12 ll.16–21.

**16.** Maguire Deposition at 59.

**17.** McLean Deposition at 59.

**18.** Maguire Deposition at 55–56.

CMC or any of its subsidiaries controlled the day to day operations of SATOL. Watkins Deposition at 13–17.

Of course, CMC, through CMI, exercised some control over GTO, and through GTO, over SATOL, and some employees of both GTO and SATOL retained ties to CMC. *See, e.g.,* Watkins Deposition at 6–7. For example, as noted above, CMC contributed 3 directors to GTO and two to SATOL. However, all three owners of GTO dedicated officers to GTO, and the majority of GTO employees were furnished by Genstar and Federal Pacific. Maguire Deposition at 32 ll.14–18, 35 ll.2–6. Also, GTO maintained offices in the CMC office complex, although not all GTO employees were on the CMC payroll. Watkins Deposition at 9–11. Some CMC employees acted as or procured persons to act as supervisory staff for SATOL. *Id.* at 15 ll.1–12. SATOL secured some, but not all, of its supplies from the Merrett Ship Supply, which is at least partially owned by CMC. *Id.* at 15 ll.16–27. Such connections, however, are woefully insufficient to support an allegation that either GTO or SATOL was the "alter ego" of CMC.

### iii. Case Law

While the determination of whether to disregard the corporate entity requires "a flexible fact-specific approach focusing on equity,"[19] the case law indicates that a much greater showing is required than is present here. In several cases, courts have refused to disregard the corporate entity, despite a stronger connection between the parent and the subsidiary.

For example, in *Hargrave v. Fibreboard Corp., supra,* the parent corporation owned 100% of the stock of the subsidiary, had complete authority over general policy, including product selection, officer retention, and investment approval.[20] The Fifth Circuit held that the subsidiary was not the "alter ego" of the parent corporation and that the parent's authority over the subsidiary "was no more than that appropriate for

a sole shareholder of a corporation, and certainly not enough to warrant the extraterritorial exercise of jurisdiction over that shareholder under the Texas statute." 710 F.2d at 1161.

More recently, in *Dalton v. R & W Marine, supra,* the Fifth Circuit held that several subsidiary corporations were not the "alter egos" of their parent even though: 1) the parent owned 100% of all its subsidiaries' stock and was responsible for general policy; 2) the subsidiaries funneled their revenues into centralized bank accounts and filed joint tax returns with the parent; and 3) the parent offered a benefit plan to the subsidiaries' employees. The court held that the question was a close one, but that the above factors were outweighed by the parent's observation of corporate formalities and the fact that the subsidiaries were responsible for daily operations, kept their own books, and filed separate state tax returns. 897 F.2d at 1859.

In the instant case, the question is not nearly as close as it was in *Dalton.* CMC was always only a partial owner of SATOL and held only a ⅓ interest in GTO until some two years after Villar's death. CMC never held any interest in the other two owners of GTO. GTO policy was determined by a management committee which included members from all three owner corporations, not just from CMC. A unanimous decision was required before any action could be taken and CMC had no power to override the dissent of any director. Moreover, no one at CMC or any of its subsidiaries had any control over the day to day operations of SATOL. In short, it is clear that, under Texas law, none of the Codefendants can be considered the "alter ego" of CMC. *See also Edwards Co. v. Monogram Indus. Inc.,* 730 F.2d 977, 984–87 (5th Cir.1984) (en banc); *In re Blanton,* 105 B.R. 811 (Bankr.W.D.Tex.1989); *Lucas v. Texas Indus., Inc.,* 696 S.W.2d 372, 374–

---

**19.** *Castleberry v. Branscum, supra,* 821 S.W.2d at 273.

**20.** Significantly, the corporations involved, like the corporations here scrupulously observed

corporate formalities, including the maintenance of separate bank accounts, filing separate tax returns and the like.

76 (Tex.1984); *3–D Elec. Co. v. Barnett Constr. Co.*, 706 S.W.2d 135, 138–46 (Tex. App.—Dallas 1986, writ ref'd n.r.e.).

### 2. General Jurisdiction and Plaintiffs' Request for Further Discovery.

Plaintiffs request, however, that they should be allowed more time to conduct discovery on the issue of personal jurisdiction. They assert that they have never had the opportunity to conduct such discovery, that there is some evidence that certain Codefendants have other, specific contacts with Texas not present in the record, and that the Defendants have, by merging and reorganizing various entities, acted to improperly defeat the exercise of personal jurisdiction. The Court does not agree.

First, the plaintiffs had ample opportunity to conduct discovery as to the forum non conveniens issue during the California portion of this litigation. While the two issues are not absolutely identical, the forum non conveniens determination necessarily involves an inquiry as to the parties' activities in various forums. *See Wood v. Santa Barbara Chamber of Commerce, Inc.*, 507 F.Supp. 1128, 1137–38 (D.Nev.1980) (requirement of reasonableness for exercise of personal jurisdiction may be judged by standards analogous to those used to decide forum non conveniens motions). This discovery revealed only one potentially significant contact between only one of the Codefendants and the State of Texas.

Plaintiffs argue, however, that this one contact demonstrates Defendants lack of good faith such that Plaintiffs should be allowed more time for discovery. In particular, Plaintiffs rely on the Runion Affidavit which asserts that Defendants have attempted to conceal GTO's contacts with Texas. Mr. Runion bases this conclusion on a portion of the Maguire Deposition. The Runion Affidavit quotes the Maguire Deposition as follows:

Q: Does Crowley [CMC] maintain an office in Houston?

A: Yes, Crowley has an office [sic] Houston. GTO had an office in Houston as well....

Q: Is that not a subsidiary of CMC?

A: Oh yes, but that would be just *part of* [sic] *Crowley bag of tricks,* you know.

Runion Affidavit at 9 (emphasis added in affidavit).

In their pleadings, Plaintiffs repeatedly refer to Mr. Runion's conclusion, based on the above passage, that Defendants have somehow engaged in trickery to defeat personal jurisdiction and otherwise avoid their obligations to Plaintiffs.

However, the Runion Affidavit omits a crucial portion of the Maguire Deposition. The entire exchange reads as follows:

Q: Does Crowley maintain an office in Houston?

A: Yes. Crowley has an office in Houston. GTO had an office in Houston as well.

Q: Does it still?

A: It does not.

Q: Did it have one there in '77?

A: It may very well have.

Q: Well Brinkerhoff has no office in Houston does it?

A: Brinkerhoff, to my knowledge, does not have an office in Houston.

Q: Is that not a subsidiary of CMC?

A: Oh, yes, but that would be just part of the Crowley bag of tricks, you know.

Maguire Deposition at 79 11.13–25.

In other words, the "bag of tricks" line, whatever its intended meaning, does not refer to GTO or to CMC's relationship with GTO, but to Brinkerhoff, *who is not a party to this litigation.* This passage demonstrates, not that Defendants have failed to act in good faith, but that, at best, Plaintiffs have relied on an obvious and easily discoverable misrepresentation.

Moreover, at best, the Maguire deposition establishes that, at some time, GTO had an office in Houston. This, without more, is insufficient to establish GTO's "continuous and systematic" general business contacts with Texas such that this Court may exercise personal jurisdiction over GTO. *Helicopteros Nacionales de Colombia, S.A. v. Hall, supra,* 466 U.S. at

413–18, 104 S.Ct. at 1871–74. Yet despite Plaintiffs' protestations to the contrary, there is no evidence that any "more" exists. It is admitted that CMC is doing business in Texas. Beyond that, however, it does not appear that any of the Codefendants have anything but the most transitory of contacts with the State of Texas. Plaintiffs have been pursuing this litigation in this country for over ten years, and yet the record indicates only that GTO once maintained an office in Texas, and that, on occasion, vessels under the control of one or more of the Codefendants may pass through a Texas port. This is not enough to sustain the exercise of general personal jurisdiction and does not seem likely to lead to anything that would support the exercise of jurisdiction. Indeed, Plaintiffs have been forced to rely on a most obvious and blatant misrepresentation to even assert that some ground of personal jurisdiction other than the "alter ego" doctrine exists. In the Court's view, more discovery would only serve to further vex and harass Defendants. Therefore, the Court declines to grant Plaintiffs extra time to conduct discovery.

### B. Fairness

 Even assuming that Codefendants have sufficient contacts with Texas, the exercise of general personal jurisdiction would not be consistent with "traditional notions of fair play and substantial justice." In evaluating the fairness of the exercise of personal jurisdiction, a court must consider several factors: the burden on the defendant; the forum state's interest in the dispute; the plaintiff's interest in obtaining relief; the judicial system's interest in having the suit resolved efficiently; and the interest of the several states in furthering social policies. *Asahi Metal Indus. Co. v. Superior Court, supra,* 480 U.S. at 113, 107 S.Ct. at 1032–33.

The State of Texas has no interest in this case; it does not involve Texas citizens, Texas property, or Texas law. Outside of CMC, the only participants with any ties to Texas are the attorneys. Moreover, resolution of this dispute in Texas will in no way further the judicial system's interest in efficient dispute resolution or the interests of the several states. This case involves the application of foreign law to a dispute between Philippine plaintiffs and, with the exception of CMC, alien defendants. While Plaintiffs' offer to pay the travel expenses of witnesses and the like might in some way reduce the financial burden Codefendants would surely face if required to defend in Texas, it in no way makes it any more "fair," in terms of the relevant factors, to require Codefendants to defend this suit either in this Court or in Texas state court. Therefore, the Court finds that even if the Codefendants' contacts with Texas could be said to be continuous and systematic, the exercise of personal jurisdiction would not be fair and reasonable. *See Dalton v. R & W Marine, Inc., supra,* 897 F.2d at 1363; *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 377 (5th Cir. 1987).

### C. Court's Ruling

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the initial burden of establishing that jurisdiction exists. *Morris v. SSE, Inc.,* 843 F.2d 489, 492 (11th Cir.1988); *Nolan v. Boeing Co., supra,* 736 F.Supp. at 127. Plaintiffs have failed to make a prima facie showing that any of the Codefendants have continuous and systematic contacts with the State of Texas or that any of the Codefendants are the "alter ego" of CMC. Therefore, the Court finds that it cannot exercise personal jurisdiction over any of the Codefendants. The Codefendants' Motion to Dismiss is therefore GRANTED. With the departure of the Codefendants, complete diversity now exists between the Plaintiffs and CMC, the remaining Defendant. Therefore, the Plaintiffs' Motion to Remand is DISMISSED AS MOOT.[21]

---

**21.** The Court has found that it may consider Defendants' Motion to Dismiss first. Alternatively, assuming that Plaintiffs are correct and the Court must consider their Motion to Remand first and must grant such motion unless Defendants demonstrate that there is no way in which Plaintiffs can establish personal jurisdiction over the Codefendants, the Court nevertheless finds that, based on these facts, there is no possibility that Plaintiffs could establish person-

1482

### III. FORUM NON CONVENIENS.

The Court now turns to CMC's Motion to Dismiss for Forum Non Conveniens. CMC argues first, that the forum non conveniens dismissal granted by United States District Court for the Northern District of California is *res judicata* for purposes of this action. Alternatively, CMC argues that a forum non conveniens dismissal is appropriate under controlling principles of federal law.

#### A. *Res Judicata.*

 As between the same parties, a final judgment on the merits rendered by a court of competent jurisdiction is a bar to all future actions based on the same transaction or occurrence. *Robinson v. National Cash Register Co., supra,* 808 F.2d at 1124. In the instant case, the California federal district court granted a forum non conveniens dismissal in favor of CMC and against Plaintiffs. That court's jurisdiction is not challenged. Therefore, the only question is whether such dismissal was a final judgment on the merits. If so, then CMC is entitled to a dismissal on the basis of *res judicata.*

 A forum non conveniens dismissal in one forum does not necessarily preclude the maintenance of an identical suit in another forum. *See, e.g., Mizokami Bros. v. Mobay Chem. Corp.,* 660 F.2d 712, 716–17 (8th Cir.1981) (Missouri federal court not required to dismiss suit that had been dismissed by Arizona court for forum non conveniens). In the instant case, however, a California federal court has already granted a forum non conveniens dismissal on the ground that a foreign forum rather than any forum in the United States is the appropriate forum. Moreover, there is absolutely nothing, and, in particular, Plaintiffs have not drawn the Court's attention to anything, to suggest that Texas is a

more convenient forum than California (where CMC has its principal place of business). Indeed the record suggests that Texas is, if anything, less convenient. Under these circumstances, the Court believes that the California court's prior dismissal should be binding on this Court.

In *Exxon Corp. v. Chick Kam Choo,* 817 F.2d 307 (5th Cir.1987), *rev'd,* 486 U.S. 140, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988), a Fifth Circuit panel held that:

> [O]nce a court of competent jurisdiction has squarely passed on an issue fairly mooted between the same parties, on the merits of the cause or otherwise, that issue may not be relitigated. In the case of forum non conveniens, the plaintiff in the new forum must do more than ask for a rebalancing of forum non conveniens considerations. He must show objective facts relevant to the issue that materially alter the considerations underlying the previous resolution.

*Id.* at 314.

Although *Chick Kam Choo* was ultimately reversed by the Supreme Court, the panel's forum non conveniens analysis was not disapproved. This Court believes that *Chick Kam Choo* represents the current state of the law, at least in this circuit.[22]

 In the instant case, the California district court determined that a Philippine forum was more appropriate than an American forum, not just more appropriate than a California forum. Moreover, Plaintiffs have presented no new arguments to this Court that would suggest that this Court should rebalance the relevant factors in a different manner, or that, were this Court to undertake a forum non conveniens analysis, it should consider any factors other than those already considered by the California court. Rather, Plaintiffs appear to be motivated solely by a desire to take

al jurisdiction over the Codefendants. Viewed in this procedural posture, the Court would first deny Plaintiffs' Motion to Remand and then grant the Codefendants' Motion to Dismiss.

**22.** Besides the decision in *Chick Kam Choo,* the Court's holding is supported by the Third Circuit's decision in *Pastewka v. Texaco, Inc.,* 565 F.2d 851 (3d Cir.1977) in which the court held

that a forum non conveniens dismissal granted by a New York district court and upheld by the Second Circuit was binding on a Delaware district court where the objective criteria and the material facts underlying them were the same in both cases. *Id.* at 854. *See also Barrantes Cabalceta v. Standard Fruit Co., supra,* 667 F.Supp. at 838.

advantage of Texas's "open courts" doctrine.[23] Under these circumstances, the Court believes that this action is barred by *res judicata* as a result of the prior forum non conveniens dismissal by the District Court for the Northern District of California.

### B. Forum Non Conveniens.

Even assuming, however, that this action is not barred by *res judicata,* the Court finds that CMC's Motion to Dismiss for Forum Non Conveniens should be GRANTED.

#### 1. Choice of Law.

■ As a threshold matter, Plaintiffs argue that Texas forum non conveniens law, not federal law, should provide the rule of decision. This contention is erroneous. Admittedly, the Supreme Court has not decided whether a federal court sitting in diversity should apply federal or state forum non conveniens law.[24] However, the Fifth Circuit has held that federal law, not state law, provides the rule of decision. In *In re Air Crash Disaster,*[25] the Fifth Circuit carefully weighed the factors both for and against the application of state and federal forum non conveniens law. The

court recognized that a forum non conveniens dismissal is an "outcome-determinative," and that ignoring state law might encourage forum shopping. *Id.* at 1156–58. The court concluded, however, that "the interests of the federal forum in self-regulation, in administrative independence, and in self-management" necessitated the application of federal law. *Id.* at 1159. Thus, in this circuit, federal law controls forum non conveniens determinations in federal court. *Nolan v. Boeing Co.,* 919 F.2d 1058, 1068 n. 11 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1587, 113 L.Ed.2d 651 (1991); *Bastoe v. Sterling Drug, Inc.,* 683 F.Supp. 586, 587 (S.D.Miss. 1988).[26]

Plaintiffs assert, however, that in *In re Air Crash Disaster,* the Fifth Circuit left open the question of whether state or federal forum non conveniens law applies in a diversity case that has been removed from state court. This position is ridiculous. First, the Fifth Circuit's holding in *In re Air Crash Disaster* was that federal forum non conveniens law applies in all diversity cases, not just those originally filed in federal court. *In re Air Crash Disaster, supra,* 821 F.2d at 1159.[27] More generally, a

**23.** Under Texas law, a court may not dismiss a personal injury or wrongful death action for forum non conveniens. *Dow Chem. Co. v. Castro Alfaro,* 786 S.W.2d 674, 677–79 (Tex.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 671, 112 L.Ed.2d 663 (1991). It is clear from the record, however, that, as compared to California, CMC has fewer contacts with Texas, Texas has less interest in deciding this case, and Texas would be at least as inconvenient a forum. Moreover, as noted *infra* the Court believes that on these facts a Texas state court would be required to apply federal, not Texas, forum non conveniens law. *See infra* note 34. Under these circumstances, and given that Plaintiffs have introduced no new objective facts that material alter the California court's determination, the Court does not see how the fact that Texas law does not recognize the doctrine of forum non conveniens is in any way relevant to the Court's decision.

**24.** However, virtually all lower courts that have considered the issue have held that federal law applies. *See* Robertson & Speck, *Access to State Courts in Transnational Personal Injury Cases: Forum Non Conveniens and Antisuit Injunctions,* 68 Texas L.Rev. 937, 954 n. 99 (1990). At least one recent Supreme Court decision suggests that

the Supreme Court would agree. *See Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 30–32, 108 S.Ct. 2239, 2244–45, 101 L.Ed.2d 22 (1988) (holding that federal, not state, law controls the interpretation and effect of a forum selection clause).

**25.** 821 F.2d 1147 (5th Cir.1987) (en banc), *vacated on other grounds sub nom. Pan Am. World Airways, Inc. v. Lopez,* 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400, *aff'd in relevant part and vacated in part,* 883 F.2d 17 (5th Cir.1989).

**26.** Moreover, this rule represents the majority position. *See Sibaja v. Dow Chem. Co.,* 757 F.2d 1215, 1217–19 (11th Cir.), *cert. denied,* 474 U.S. 948, 106 S.Ct. 347, 88 L.Ed.2d 294 (1985); 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3828, at 293–94 (1986); Robertson & Speck, *supra,* 68 Texas L.Rev. at 954 n. 99; Speck, *Forum Non Conveniens and Choice of Law in Admiralty: Time for an Overhaul,* 18 J.Mar.L. & Com. 185, 197 (1987).

**27.** In support of their arguments, Plaintiffs quote extensively from those portions of the opinion which discuss the benefits of applying state forum non conveniens law. In the end,

federal court sitting in diversity must apply federal or state law according to the dictates of the time honored rule of *Erie R.R. v. Tompkins*,[28] but irrespective of whether the case was originally filed in federal court or was removed to federal court from state court. In many respects, the removal statute[29] is the mirror image of the diversity statute.[30] The latter often allows foreign plaintiffs to obtain a more neutral forum within which to resolve their disputes against resident defendants. *See, e.g., Chick Kam Choo v. Exxon Corp., supra,* 764 F.2d at 1152–53 & n. 3. Conversely, the former often permits nonresident defendants to obtain a more neutral forum as against resident plaintiffs. However, regardless of whether a diversity case was originally filed in federal court or removed from state court, an issue is either controlled by federal law or it is not. Plaintiffs have cited no cases, and the Court has found none, to support the extraordinary proposition that federal law may govern an issue in a case originally filed in federal court but state law may govern that same issue in an otherwise identical case that was removed from state court. To hold otherwise would require this Court to establish a new rule which is inconsistent with the entire body of *Erie* jurisprudence.

### 2. Application of Federal Forum Non Conveniens Law.

 Before dismissing a case for forum non conveniens, a court must first determine whether an adequate foreign forum exists. *In re Air Crash, supra,* 821 F.2d at 1165. An adequate forum is one in which all parties are subject to jurisdiction, the entire case can be heard, and all parties will be treated fairly. *Id.* In the instant case it appears that Plaintiffs have allowed the Philippine statute of limitations to expire. This does not mean, however, that the Philippines is no longer an adequate

forum. The District Court for the Northern District of California determined that this action should be heard in the Philippines: Plaintiffs are Philippine citizens; Philippine law applies;[31] and the accident took place in Saudi Arabia, much closer to the Philippines than to the United States. Moreover, to ensure that the Philippines was an adequate forum, the district court conditioned its dismissal on Defendants' agreement to waive certain procedural defenses to any action brought within one year in the Philippines based on Mr. Villar's death. *Villar v. Crowley Maritime Corp., supra,* 782 F.2d at 1482–83. Plaintiffs' failure to initiate such an action cannot serve as a reason for this Court to conclude that an adequate foreign forum does not now exist. Otherwise, every Defendant suffering a forum non conveniens dismissal with instructions to pursue the case in a foreign forum would simply wait until the foreign forum's statute of limitations expired and then refile in the United States.

If an adequate forum is available, the Court must then balance the public and private interest factors outlined by the Supreme Court in *Gulf Oil Corp. v. Gilbert.*[32] The private interest factors include:

> [T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained.

*Id.* at 508, 67 S.Ct. at 843.

The relevant public factors include the administrative difficulties caused by crowded dockets, the burden of imposing jury duty

---

however, the Fifth Circuit rejected this approach. *In re Aircrash Disaster, supra,* 821 F.2d at 1159.

**28.** 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**29.** 28 U.S.C.A. § 1441 (West 1973 & Supp.1991).

**30.** 28 U.S.C.A. § 1332 (West 1966 & Supp.1991).

**31.** *See* note 4, *supra.*

**32.** 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

on citizens of a forum with no relation to the dispute, the local interest in having localized controversies decided in that locality, and the appropriateness of deciding diversity cases in the forum whose law provides the substantive rules of decision. *Id.* at 508–09.

 After carefully examining the record, the Court is convinced that there is absolutely nothing to warrant a different determination than that given by the District Court for the Northern District of California. As to the private factors, Plaintiffs are residents of the Philippines; they are closer to a Philippine forum than to an American forum. Moreover, Plaintiffs' choice of an American forum is entitled to less weight because they are not American citizens. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255–56 & n. 23, 102 S.Ct. 252, 265–66 & n. 23, 70 L.Ed.2d 419 (1981). Additionally, there is no evidence to indicate that the cost of obtaining witnesses will be any more difficult in the Philippines than in Texas. While some potential witnesses, specifically some employees of CMC, may reside in the United States (although not in Texas), the Plaintiffs are Philippine citizens and the record does not indicate the citizenship of the eyewitnesses to the accident. Finally, the accident took place in Saudi Arabia. Should a view of the accident site be necessary, a Philippine forum would be more convenient than a Texas forum. Thus, on balance, the private interest factors favor a forum non conveniens dismissal. *See Villar v. Crow-*

*ley Maritime Corp., supra,* 782 F.2d at 1482–83.

Similarly, the public interest factors clearly favor dismissal. This controversy is governed by foreign law.[33] A Philippine court is better placed to apply Philippine law, and at least as well placed to apply Panamanian and Saudi Arabian law, than is a Texas court. Moreover, the Philippines has a strong interest in deciding this case because of its relationship to both Plaintiffs and Mr. Villar. By contrast, beyond the general fact that CMC does business in Texas, the State of Texas has no interest in this case, and it would be an undue imposition on both Texas court personnel and Texas jurors to have this case adjudicated in Texas. *See id.* at 1483.

## IV. INJUNCTION AGAINST FURTHER SUITS.

 This is the third suit Plaintiffs have filed based on the death of Mr. Villar. Over five years ago, Plaintiffs were informed that the Philippines was the appropriate forum for this lawsuit. At the time, Defendants stood ready to defend in a Philippine court. Plaintiffs have never brought suit in the Philippines, however. Instead, they have continued to pursue Defendants in American courts, first in California, now in Texas. Further litigation in American courts can serve no purpose other than to vex and harass Defendants.[34] Therefore Plaintiffs are hereby ENJOINED from instituting any new proceedings based on the facts underlying this dispute in any federal court, in any Texas

---

**33.** *See* note 4, *supra.*

**34.** Additionally, attempting to pursue Defendants in Texas state court is not a viable option for Plaintiffs because the state court would, on the particular facts of this case, be required to apply federal, not state, forum non conveniens law. As noted above, Texas law does not recognize forum non conveniens in wrongful death and personal injury cases. *Dow Chem. Co. v. Castro Alfaro, supra,* 786 S.W.2d at 677–79. However, in *Exxon Corp. v. Chick Kam Choo, supra,* 817 F.2d at 324, a Fifth Circuit panel held that under the so called reverse-*Erie* doctrine federal forum non conveniens law preempts state law in maritime cases. Although the court's order enjoining a state court proceeding was ultimately reversed by the Supreme Court,

the Court did not disapprove of the panel's reverse-*Erie* analysis, and, indeed, appeared to suggest that this portion of the panel's opinion was correct. *See Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140, 149–150, 108 S.Ct. 1684, 1691, 100 L.Ed.2d 127 (1988); *Id.* at 151, 108 S.Ct. at 1692 (White, J., concurring). It is this Court's opinion that *Chick Kam Choo* represents the current state of the law in this circuit on this issue. *See Camejo v. Ocean Drilling & Exploration,* 838 F.2d 1374, 1382 (5th Cir.1988). Therefore, a state court would, on the facts of this case, be required to apply federal forum non conveniens law. Since this Court has already done so, that issue may not be relitigated in state court.

state court, or in any other state court.[35] *See Dombrowski v. Pfister,* 380 U.S. 479, 484 n. 2, 85 S.Ct. 1116, 1119–20 n. 2, 14 L.Ed.2d 22 (1965) (noting that Anti–Injunction Act, 28 U.S.C.A. § 2283 (West 1978) does not preclude injunctions prohibiting the institution of state court suits); Robertson & Speck, *supra,* 68 Texas L.Rev. at 956 n. 118 (1990) (noting that a federal court may enjoin parties from filing a state court suit as part of a forum non conveniens dismissal).

## V. SANCTIONS.

■ 28 U.S.C.A. § 1927 (West Supp. 1991) prohibits the persistent prosecution of meritless claims. An attorney who violates section 1927 may be required to satisfy personally the costs, expenses, and attorneys' fees of the opposing party. Similarly, Fed.R.Civ.P. 11 prohibits frivolous filings and the misuse of judicial resources to harass the opposing party. *Robinson v. National Cash Register Co., supra,* 808 F.2d at 1130.

> [W]hile enthusiasm and innovations in advocacy are to be encouraged, an attorney is under the correlative obligations to conduct himself in a manner consistent with the proper functioning of the judicial system. A person cannot proceed with impunity when his argument has no merit.

*Id.* at 1131 (citation omitted).

■ Simply put, Rule 11 requires that, before signing a pleading, an attorney must make a reasonable inquiry to determine that such pleading is supported by existing law or by a good faith argument for a change, extension, or modification of existing law. At a minimum, an attorney must have some reasonable basis for his pleadings. *See Farguson v. MBank Houston, N.A.,* 808 F.2d 358, 359 (5th Cir.1986). This requirement applies to every paper signed during the course of the litigation. The attorney's conduct is evaluated as of the time the paper was signed, although the substance of a series of filings may indicate a pattern of conduct that violates Rule 11. *Thomas v. Capital Sec. Serv.,*

*Inc.,* 836 F.2d 866, 875 (5th Cir.1988) (en banc).

Once a violation of Rule 11 is found, a district court must impose sanctions. The court should attempt to fashion sanctions to meet Rule 11's goal of deterrence, punishment, and compensation. The sanctions imposed must be reasonable, but beyond that the district court retains broad discretion to fashion an appropriate penalty. *Id.* at 878–80.

In the instant case the Court finds that Plaintiffs' counsel has engaged in several sanctionable activities. First, Plaintiffs' counsel has repeatedly urged in several pleadings the theory that the Codefendants were subject to personal jurisdiction in Texas because they were all the "alter ego" of CMC. The Court finds this argument unreasonable for several reasons. First, Plaintiffs' counsel has also argued that this case should be remanded for lack of complete diversity. To accept both these arguments the Court would have had to accept the startling proposition that the Codefendants could be considered the "alter egos" of CMC for personal jurisdiction purposes but could be considered as separate and independent corporate entities for subject matter jurisdiction purposes. This position is unreasonable. It is not supported by existing law or a good faith argument for a change, modification, or extension of existing law. Indeed, to so hold would be to fly in the face of reason itself.

Moreover, based on the record it was unreasonable for Plaintiffs' counsel to assert that any of the Codefendants could be considered the "alter ego" of CMC. As noted above, there are numerous cases in which courts have refused to find that a subsidiary is an "alter ego" of its parent even though there are more ties between the two than between CMC and any of the Codefendants. Beyond this, however, it was patently unreasonable for Plaintiffs' counsel to assert that Federal Pacific, Genstar Overseas, or any of their subsidiaries were the "alter egos" of CMC. CMI, a wholly owned subsidiary of CMC, Federal Pacific, and Genstar Overseas were partners in a joint venture which included joint

---

**35.** Except of course for an appeal from a judg-

ment of this Court.

ownership of GTO. The record does not contain a shred of evidence to support an allegation that CMC ever owned any stock in or exercised the slightest degree of control over Federal Pacific or Genstar Overseas or any of their subsidiaries.[36] Such an allegation is wholly without foundation. *See Peregoy v. Amoco Production Co.*, 929 F.2d 196 (5th Cir.1991).

Additionally, the Court finds unreasonable the argument that while a federal court is bound to apply federal forum non conveniens law to a case originally filed in federal court, it may apply state law to a case removed to federal court from state court. This argument is indefensible. There is not a jot of support, either in the case law or in commentary, to support such a conclusion. As noted above, Plaintiffs' counsel has, in pressing this position, repeatedly misstated the Fifth Circuit's holding in *In re Air Crash Disaster. See Spiller v. Smithers*, 919 F.2d 339 (5th Cir. 1990). Moreover, acceptance of counsel's argument would require this Court to go against almost every case that has ever considered the *Erie* doctrine. Therefore, the Court finds that counsel's argument is not supported by existing law or by a good faith argument for change or modification of existing law.

Finally, and most disturbingly, Plaintiffs' counsel has repeatedly relied on the Runion affidavit to support the argument that Defendants have engaged in bad faith and have otherwise attempted to avoid their obligations to Plaintiffs. As noted above, the Runion affidavit, besides being wholly improper and unsatisfactory, contains a blatant misrepresentation of deposition testimony. Plaintiffs' counsel has repeatedly relied on this misrepresentation in several pleadings. *At the very best*, Plaintiffs' counsel has relied on an easily discoverable falsehood that should have been discovered in the exercise of reasonable care and diligence. At worst, Plaintiffs' counsel has

conspired with Mr. Runion in a deliberate attempt to mislead this Court.

█ In the Court's view, the activities of Plaintiffs' counsel clearly warrant sanctions. At this time, the Court is inclined to issue the following Order:

Plaintiffs counsel is hereby ORDERED to pay sanctions in the amount of $10,-000.00. In addition, Plaintiffs' counsel are ORDERED to pay all of Defendants' expenses incurred in connection with this action, including costs, expenses, and attorneys fees. Within 10 days after the entry of this Order, Defendants will submit an order which is consistent with the Fifth Circuit's opinion in *Johnson v. Georgia Highway Dept.*, 488 F.2d 714 (5th Cir.1974) listing all expenses including attorneys fees. Plaintiffs counsel must pay both the fine and the Defendants' expenses within 20 days thereafter (i.e. within 30 days after the entry of this Order). *Failure to pay the $10,-000.00 or the Defendants' expenses as approved by the Court will be treated as an act of civil contempt.* This Order will not be stayed pending appeal. Plaintiffs' counsel and his firm will be held jointly and severally liable for all such sanctions.

However, the Due Process Clause of the Fourteenth Amendment requires that counsel be given notice and an opportunity to respond before sanctions are imposed.[37] Therefore, Plaintiffs counsel is hereby ORDERED to show cause, within ten days of the date of this Order, why such sanctions should not be imposed within ten days of the date of this ORDER. *Failure to respond will be taken as an indication of no opposition.*

### VI. COURT'S RULING.

Therefore, it is hereby ORDERED, ADJUDGED, AND DECREED that Codefendants' Motion to Dismiss for Want of Personal Jurisdiction is GRANTED.

---

**36.** Except to the extent that CMC bought out Genstar Overseas' and Federal Pacific's interests in GTO sometime *after* Villar's death.

**37.** Where sanctions are to be imposed for filing pleadings with no basis in fact, the existence of Rule 11 itself is sufficient notice. *Spiller v. Smithers, supra,* 919 F.2d at 346. Where sanc-

tions are to be imposed for filing pleadings with no basis in law or for advancing dilatory arguments, specific notice must be given. Id. at 347. The opportunity to respond is mandated. However, a formal hearing is not required, especially where, as here, the trial judge has full knowledge of the relevant facts. *See id.*

It is further ORDERED that Plaintiffs' Motion to Remand is DENIED AS MOOT.

It is further ORDERED that Defendant CMC's Motion to Dismiss is GRANTED ON GROUNDS OF *RES JUDICATA* AND, IN THE ALTERNATIVE, FOR FORUM NON CONVENIENS.

It is further ORDERED that, except for an appeal of this Court's judgment, Plaintiffs are ENJOINED from filing any new proceedings in connection with the events underlying this suit in any state or federal court of the United States.

It is further ORDERED that, except for a response regarding Rule 11 sanctions, Plaintiffs are to file no further pleadings in this Court, on any matter addressed by this Order. Any further relief in this cause, save and except the Rule 11 sanction response, and the Court's consideration thereof, shall be sought from the United States Court of Appeals for the Fifth Circuit.

It is further ORDERED that Plaintiffs' counsel will show cause within ten days of the date of this Order why he should not suffer sanctions as outlined in Part V of this Order.

IT IS SO ORDERED.