**Jerry DALTON, Plaintiff–Appellant,**

v.

**R & W MARINE, INC. (Hartley Marine Corp., d/b/a R & W Marine, Inc.), et al., Defendants–Appellees.**

No. 89–3681
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 13, 1990.

---

Elizabeth A. Hammant, Lamothe & Hamilton, Frank E. Lamothe, III, New Orleans, La., for plaintiff-appellant.

James F. Shuey, Lemle, Kelleher, Kohlmeyer, Dennery, Huntlye, New Orleans, La., for defendants-appellees.

Before POLITZ, GARWOOD, and JOLLY, Circuit Judges.

POLITZ, Circuit Judge:

Jerry Dalton appeals the dismissal of his claims against Hartley Marine Corp. and Midland Enterprises for lack of personal jurisdiction. Finding the district court's decision supported by the facts and applicable law, we affirm.

### Background

This suit arises out of an injury allegedly sustained in a slip and fall by Dalton while employed as a deckhand aboard the M/V MIKE CREDITOR, which operated in the Mississippi River off Memphis, Tennessee. Asserting subject-matter jurisdiction under the Jones Act and general maritime law Dalton, a Mississippi resident, filed suit in federal court in New Orleans. Dalton sued his employer, R & W Marine, an unincorporated division of Hartley Marine Corp. Hartley, a Delaware corporation, has its statutory office in Wilmington, its registered office in Cincinnati, Ohio, and its principal headquarters in Paducah, Kentucky and Point Pleasant, West Virginia.

Hartley moved to dismiss for lack of personal jurisdiction, improper venue, and insufficiency of service. After taking Hartley's deposition through its general counsel, pursuant to Fed.R.Civ.P. 30(b)(6), Dalton filed an amended complaint adding Midland Enterprises, Inc., Hartley's parent corporation, as a defendant. Midland, also a Delaware corporation with its principal

place of business in Cincinnati, filed an identical motion to dismiss.

According to the affidavits and deposition submitted to the district court Hartley, a Midland subsidiary, is one of five divisions providing services to the inland marine towing industry, including midstream refueling, boat and barge repair and building, and towing. Hartley confines its activities to the inland waters in and adjacent to West Virginia, Kentucky, and Tennessee. It transacts no business in Louisiana, is not authorized to do business in Louisiana, and has no offices, employees, or property in Louisiana.

Midland, owner of all of Hartley's stock, is a holding company and parent of a number of subsidiaries, including five corporations organized under Louisiana law, and four licensed to do business in Louisiana. It has no employees and has no offices or property in Louisiana, does no direct business there, and is not authorized to do so. Midland is, however, record owner of most of the boats and barges operated by its subsidiaries, including those in Louisiana, which do so under a bareboat charter. These boats regularly travel the Mississippi River, in and through Louisiana. Midland also oversees advertising that reaches the state.

Dalton contends that Midland and Hartley had sufficient contacts with Louisiana to be subject to jurisdiction there. In the alternative, Dalton asserted that Midland was the alter ego of its Louisiana subsidiaries, arguing that this could then be imputed to Hartley by virtue of its relationship with Midland. The district court dismissed Dalton's complaint, ultimately concluding that assertion of its jurisdiction over Midland and Hartley would violate norms of fair play and substantial justice. Dalton timely appealed.

### Analysis

■ The analysis used to determine whether a court may assert jurisdiction over a non-resident defendant has two components. First, the defendant must be amenable to service of process under the forum state's jurisdictional long-arm statute. Second, the exercise of jurisdiction under this statute must comport with norms imposed by the due process clause of the fourteenth amendment. *See Stuart v. Spademan*, 772 F.2d 1185 (5th Cir.1985). Louisiana's long-arm statute was first interpreted to permit service of process to the extent permitted by the due process clause. *See Pedelahore v. Astropark, Inc.*, 745 F.2d 346 (5th Cir.1984). The pertinent statute was then specifically amended to so provide. Acts 1987, No. 418, adding subsection (B) to La.R.S. 13:32.01. The statutory and constitutional inquiries thus merge.

■ The due process clause limits the courts' power to assert personal jurisdiction over non-resident defendants to situations in which they engage in "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citations omitted).[1] Even where such "minimum contacts" exist, we also inquire whether requiring a defendant to litigate in the forum state would be unfair. *See Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

1. Minimum Contacts.

■ This jurisdictional analysis has been further refined to vary with the nature of the underlying litigation. When a cause of action arises out of a defendant's purposeful contacts with the forum, minimum contacts are found to exist and the court may exercise its "specific" jurisdiction. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Even a single, substantial act directed toward the forum can support specific jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Where a

---

**1.** The focus of this inquiry is whether the non-resident defendant has purposefully availed himself of the benefits and protections of the forum state's laws, so as reasonably to anticipate being haled into court there. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

cause of action does not arise out of a foreign defendant's purposeful contacts with the forum, however, due process requires that the defendant have engaged in "continuous and systematic contacts" in the forum to support the exercise of "general" jurisdiction over that defendant. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In this situation, the forum state has no direct interest in the specific cause of action asserted. Accordingly, contacts of a more extensive quality and nature are required.[2] As both sides readily concede, the instant case involves the district court's exercise of its general, rather than specific, jurisdiction.

In the instant case, we review this issue *de novo*, as a question of law, bearing in mind that Dalton need only prove a *prima facie* case of personal jurisdiction prior to trial. *WNS, Inc. v. Farrow*, 884 F.2d 200 (5th Cir.1989). We find the district court's determination to be correct.

■ Dalton first contends that Midland has sufficient contacts with Louisiana to warrant personal jurisdiction over Midland there. Dalton asserts that Midland bareboat charters its boats to its Louisiana subsidiaries (which yields some 12.9% of Midland's total revenues), engages in advertising that reaches Louisiana, and has purchased vessels at marshals' sales within the state. These contacts, however, are not sufficiently systematic and continuous to constitute a general presence in the state. The strongest support for jurisdiction is Midland's bareboat charters, which by definition vest most of the incidents of ownership in the charterer operating the vessels. *See Deal v. A.P. Bell Fish Co.*, 674 F.2d 438 (5th Cir.1982). Although Midland's continued ownership of these vessels presents a somewhat more "continuous and systematic" presence in the state than Beech's airplane sales in *Bearry*, like Beech, Midland takes care that these charters are entered into, and payments made pursuant to them are remitted, in Cincinnati. A corporation's "obvious intent to exercise its due process rights" should not be disregarded lightly. *Bearry*, 818 F.2d at 376.[3]

■ Dalton's next contention, that Hartley has sufficient contacts with Louisiana in its own right to subject it to jurisdiction, is even less persuasive. Dalton asserts that Hartley sells fuel to Louisiana purchasers and that he has, at least once, traveled into Louisiana territorial waters on a boat operated by Hartley. Hartley insists that it deliberately restricts its operations to the "Upper Inland Waterways," where its facilities are located and that,

---

**2.** *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952) (jurisdiction in Ohio upheld over a Phillipine mining corporation operating in that state during World War II, president's office was in Ohio, files were kept there, board meetings were held there, and banking was handled from that state). *But see Helicopteros* (no general jurisdiction where defendant had no place of business within Texas but had traveled to Texas to negotiate a contract, made regular purchases of helicopter equipment from Texas vendors, and sent prospective pilots to Texas for training).

More recently, in *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370 (5th Cir.1987), we held that there could be no personal jurisdiction in Texas over a Delaware company with its principal place of business in Kansas. Beech was never qualified to do business in Texas, had no employees in the state, sold its goods to Texas purchasers via contracts entered into and executed in Kansas, and accepted all deliveries from Texas vendors in Kansas. Furthermore, Beech advertising appeared in Texas, but only as part of a national campaign. "In short," we concluded, "that Beech products flow into Texas does not create a general presence in that state. Each transaction was completed outside of Texas. The laws of Texas neither protected nor benefited Beech." *Bearry*, 818 F.2d at 376.

**3.** Neither Midland's advertising nor its purchase and construction of boats in Louisiana alters our conclusion. The apparently national emphasis of Midland's advertising efforts only indicates that Midland "made no attempt to limit the states in which its product was marketed." *Oreck Corp. v. U.S. Floor Systems, Inc.*, 803 F.2d 166 (5th Cir.1986), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987) (citation omitted). Furthermore, purchases and trips related thereto, even if they occur regularly, are not, standing alone, a sufficient basis for the assertion of jurisdiction. *See Helicopteros*, 466 U.S. at 417, 104 S.Ct. at 1873. Finally, the record is uncontroverted that, as regards construction of barges, the contracts for such construction were executed and paid for in Ohio, and delivery was made in Kentucky.

although it may sell fuel to companies with Louisiana billing addresses, any fuel sold was actually transferred in refueling operations conducted while the boats were underway. These alleged contacts, even if true, are insufficient to constitute presence in Louisiana for jurisdictional purposes.

Even if Midland and Hartley have insufficient contacts with Louisiana in their own right, Dalton contends, jurisdiction is warranted because Midland is the "alter ego" of its Louisiana subsidiaries and Hartley is the "alter ego" of Midland. Although the mere existence of a parent-subsidiary relationship will not support the assertion of jurisdiction over a foreign parent, there may be instances in which the parent so dominates the subsidiary that "they do not in reality constitute separate and distinct corporate entities...." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir.1983) (citations omitted); *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763 (5th Cir.1988).

*Hargrave* considered the following factors in determining whether a parent's control exceeded the norm: (1) the parent owned 100% of the subsidiary's stock; (2) the two corporations had separate headquarters; (3) they had no common officers and only one common director; (4) they observed corporate formalities; (5) they maintained separate accounting systems; (6) the parent exercised complete authority over general policy; and (7) the subsidiary exercised complete authority over daily operations, including research and development, marketing, and supply. 710 F.2d at 1160.

 Several factors point to Midland as the alter ego of its subsidiaries. Midland owns 100% of its subsidiaries and remains responsible for general policy. Its subsidiaries funnel their revenues into centralized bank accounts and file a consolidated federal tax return with Midland. Finally, Midland offers benefit plans to its subsidiaries'

employees. Nonetheless, these factors are outweighed, albeit modestly, by the fact that Midland observes corporate formalities, makes its subsidiaries responsible for daily operations including all personnel decisions, and allows each subsidiary to keep its records and accounts in separate books and file its own state tax return. Having concluded that Midland cannot be considered the alter ego of its subsidiaries, we need not address whether Hartley can be considered the alter ego of Midland. Thus we perceive no basis on which we can conclude that either Midland or Hartley has purposefully availed itself of contacts of a quality or nature that would support subjecting them to the jurisdiction of a Louisiana forum.

**2. Fairness.**

Finally, we conclude that the exercise of jurisdiction over these two corporations would violate "traditional notions of fair play and substantial justice." The Supreme Court articulated the factors relevant to this second analytical prong in *Asahi*, stating:

> A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."

480 U.S. at 113, 107 S.Ct. at 1034 (citation omitted).

 As the district court concluded, aside from its role as the forum state Louisiana has no interest in this litigation. It appears that the attorneys are the only participants with any ties to the forum.[4]

---

**4.** Dalton's contention that Midland reasonably should anticipate being haled into court in Louisiana because it has been and is an active litigant there does not alter our conclusion. Midland asserts that as a matter of policy it allows itself to be sued when it is named as a codefend-

ant with a subsidiary subject to the court's jurisdiction, and concedes that it has prosecuted several property-damage disputes in the state. Midland's submission to or invocation of jurisdiction in those cases does not affect our decision herein.

The decision of the district court is AFFIRMED.