UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No.01-40727
SUMMARY CALENDAR
_____

DP SOLUTIONS, INC.,

Plaintiff - Appellee

v.

ROLLINS, INC.; ET AL.,

Defendants

ROLLINS, INC; ORKIN EXTERMINATING COMPANY, INC.,

Defendants - Appellants.

_____

On Appeal from the United States District Court for the
Eastern District of Texas, Lufkin
(9:00-CV-324)

_____

March 14, 2002

Before REYNALDO G. GARZA, JOLLY, and WIENER, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:[1]

In this interlocutory appeal authorized by 28 U.S.C. § 1292 (a)(1), we review a district

court's temporary injunction order enjoining Defendants-appellants from attempting to hire

Plaintiff-appellee's former subcontractors and enjoining Defendant subcontractors themselves

---

[1]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

from accepting employment with Defendants-appellants. We also review the district court's threshold conclusion that it possessed personal jurisdiction over Defendants-appellant Rollins, Inc.. Because we find no error, this Court affirms the district court's temporary injunction order.

**I**

Defendant-appellant Orkin Exterminating Company ("Orkin") is the wholly owned subsidiary of Defendant-appellant Rollins, Inc. Rollins is a Delaware corporation with its principal place of business located in Atlanta, Georgia. Plaintiff-appellee DP Solutions, Inc. ("DPS") is a Texas corporation that provides computer programing and consulting services to various businesses.

Rollins hired DPS to provide computer consulting services in connection with the design and creation of an extensive software package known as the FOCUS project. The FOCUS software would eventually be installed in all of Orkin's branch offices, including its offices in Texas, so that Rollins could better monitor Orkin's operations. According to the Professional Services Agreement between the parties, Rollins and DPS promised not to hire, or to attempt to hire, each other's representatives so long as that agreement is in force, and for a one-year period following its termination. They also agreed that the contract would be governed by Texas law. All of the negotiations concerning the execution of the agreement, as well as its execution, occurred in Georgia. No executive from Rollins ever went to Texas for purposes relevant to the agreement.

Defendants John Erhart and James Zhou are former subcontractors who had worked for DPS on the FOCUS project. Before beginning their employment with DPS, each man signed a subcontractor agreement that containing a restrictive covenant that they would not work for a

-2-

client of DPS. Each of these subcontractor agreements also contained provisions stating that the agreements would be governed by Texas law and that any litigation concerning the agreements would be brought in either Dallas County or Angelina County, Texas.

DPS and its subcontractors worked on the FOCUS project in Georgia for thirty months before a dispute arose between the parties. Rollins and Orkin were dissatisfied with the escalating cost of the project; DPS took issue with Rollins' failure to pay. After much wrangling between the parties, DPS ultimately abandoned the project and removed its subcontractors from the Rollins facility.

Rollins then wished to hired DPS's former subcontractors, including Erhart and Zhou, to help complete the FOCUS project. According to Rollins, these subcontractors had a familiarity with the project itself and with the computer language upon which the system would run. Initially, Erhart and Zhou indicated a willingness work with Rollins. However, both were hesitant to violate the subcontractor agreements they had made with DPS.

On December 20, 2000, DPS brought a suit for breach of contract against Rollins in the United States District Court for the Eastern District of Texas. Rollins then filed a motion to dismiss for lack of personal jurisdiction and, in the alternative, for improper venue. DPS filed its first amended complaint adding Orkin as a defendant, including a claim for tortious interference with a contract, and asking the district court for injunctive relief. On February 5, 2001, DPS filed a request for a temporary restraining order.

On the same day, Orkin filed a state action against DPS in the Superior Court of Cobb County, Georgia. *See Orkin Exterminating Co., Inc. v. DP Solutions, Inc.*, No. 01100945-18, Super. Ct., Cobb County, Ga., Feb. 5, 2001. Orkin sought—and obtained—from the Georgia

court a temporary restraining order preventing DPS from attempting to enforce the restrictive covenants against Erhart and Zhou in Georgia.[2]

In response, DPS amended its request for federal injunctive relief to include defendants Erhart and Zhou specifically. The federal district court issued a temporary restraining order that enjoined Rollins and Orkin from hiring any of DPS personnel who had performed work for Appellants on the FOCUS project. The temporary restraining order also prohibited Erhart and Zhou from performing services for Appellants, and from performing work on the FOCUS project.

The district court then ordered discovery on the issue of personal jurisdiction and allowed DPS to add Erhart and Zhou to the underlying lawsuit and to bring claims against them for breach of contract. In the meantime, Orkin filed a motion to dismiss, and Rollins filed an alternative motion to transfer venue. After a hearing on April 23, 2001, the district court concluded that it could properly exercise personal jurisdiction over Rollins, denied Appellants' motions,[3] and granted a temporary injunction enjoining Appellants from hiring Erhart and Zhou and enjoining the subcontractors from working for Appellants.

In their appeal, Appellants argue three errors by the district court. First, they claim that the court has no personal jurisdiction over Rollins in this case. Second, they contend that the district court erred in granting DPS's motion for a temporary injunction. Finally, Appellants argue

---

[2] Since then, the case has done quite a bit of traveling. DPS removed it to the Northern District of Georgia, *Orkin Exterminating Co., Inc. v. DPS Solutions, Incs.*, No. 1:01-CV-529-WBH (N.D. Ga. Feb. 26, 2001), where the court denied Orkin's motion to remand. The case was subsequently transferred to the Eastern District of Texas. *Orkin Exterminating Co., Inc. v. DP Solutions, Inc.*, No. 9:01-CV-00331 (E.D. Tex. Dec. 20, 2001).

[3] The court did, however, grant Orkin's motions to dismiss the claims based on *quantum meruit*, or unjust enrichment.

that the temporary injunction violates the Anti-Injunction Act, 28 U.S.C. § 2283.

In addition to answering Appellants' assignments of error, DPS challenges this appeal as moot. According to DPS, Orkin and Rollins stipulated that they would not hire DPS personnel who had been assigned to the FOCUS project. DPS argues that this stipulation renders moot any appeal from the temporary injunction order.

## II

Because we cannot decide moot issues on appeal, we turn first to the issue of mootness. *C & H Nationwide, Inc. v. Norwest Bank Tex. N.A.*, 208 F.3d 490, 493–94 (5th Cir. 2000); *Gaylord Broadcasting Co. v. Cosmos Broadcasting Corp.*, 746 F.2d 251, 252 (5th Cir. 1984); *Marilyn T., Inc. v. Evans*, 803 F.2d 1383, 1385 n.5 (5th Cir. 1986).

DPS points to portions of the transcript of the April 23 hearing and argues that Appellants have "stipulated to the lower court that they would no longer solicit or attempt to hire the DPS personnel in violation of the Rollins/DPS contract and the DPS/Subcontractor agreements." Appellee's Br. at 9. Appellants counter that there was no stipulation. Rather, they claim to have merely told the court that they were "*prepared* to stipulate to the Court that [they] would not attempt to hire Zhou or Erhart and probably no other DPS' employees *if* DPS agreed not to proceed with its Motion for an Injunction." Appellants' Reply Br. at 3 (first emphasis added, second emphasis in original). Given the contrary interpretations, we must first decide whether there was such a stipulation.

The evidence in the record is inconsistent. In certain places, it would appear that Rollins' attorney did stipulate that Rollins would not hire Erhart and Zhou. The court was certainly ready to accept such a stipulation, and we can find no express statement that the stipulation was

conditioned on DPS's agreement not to proceed with its motion for the temporary injunction. However, Rollins' attorney was careful to avoid making an actual stipulation, using phrases such as "prepared to stipulate," R. at 484, and "I would be only too happy to stipulate." Tr. April 23, 2001, at 8. The record is vague with respect to a stipulation.

We find the fact that the district court granted the injunction to be the most persuasive indication that there was no stipulation. In order to grant a preliminary injunction, the district court must have concluded, *inter alia*, that there would be a substantial threat of irreparable injury if the injunction were not granted. *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 265 (5th Cir. 1999). If Rollins had stipulated as DPS contends it did, the court could not have found any threat of injury. Yet the district court did find such a threat and, with it, a need to grant the injunction. We will not presume that the district court committed error on this point. It could have granted the injunction only if there had been no stipulation.

Accordingly, we do not agree that an appeal from the temporary injunction is moot, and we turn now to the merits of Appellants' appeal.

**III**

Appellants first argue that the district court could not have properly exercised personal jurisdiction over Rollins. Where there are undisputed facts, we review a district court's decision to exercise personal jurisdiction over a nonresident defendant *de novo*. *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 335 (5th Cir. 1999); *Mink v. AAA Dev. LLC*, 190 F.3d 333, 334 (5th Cir. 1999). For the following reasons, we find no error by the district court.

The exercise of personal jurisdiction over a nonresident defendant must be proper under both the long-arm statute of the forum state in which the district court sits and the Due Process

Clause of the Fourteenth Amendment. *Submersible Sys. v. Perforadora Central, S.A. de C.V.*, 249 F.3d 413, 418 (5th Cir. 2001); *Dickson Marine,* 179 F.3d at 336. However, because the Texas long-arm statute authorizes the exercise of personal jurisdiction to the extent that it is authorized by due process, we need only decide whether the exercise of personal jurisdiction by a district court sitting in Texas comports with due process. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001); *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990); 2 Tex. Civ. Prac. & Rem. Code Ann. § 17.042.

The exercise of personal jurisdiction over a nonresident defendant comports with due process if both of the following requirements are met. First, the nonresident defendant must have "purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state." *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *Panda Brandywine*, 253 F.3d at 867; *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214–15 (5th Cir. 2000). Second, "the exercise of jurisdiction over the nonresident defendant must not offend 'traditional notions of fair play and substantial justice.'" *Wilson*, 20 F.3d at 647 (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987)); *Panda Brandywine*, 253 F.3d at 867; *Alpine View*, 205 F.3d at 215. We will deal with each of these requirements in turn.

## A

With respect to the first requirement, due process protects an individual from being subject to the judgments of a forum with which it has no meaningful contacts. *Dickson Marine*, 179 F.3d at 336. A nonresident can establish minimum contacts with the forum state sufficient to allow the exercise of either specific personal jurisdiction or general personal jurisdiction. *Panda*

*Brandywine*, 253 F.3d at 867; *Alpine View*, 205 F.3d at 215.  Specific personal jurisdiction exists where the nonresident has "purposefully directed its activities at the forum state and the 'litigation results from alleged injuries that arise out of or relate to those activities.'" *Alpine View*, 205 F.3d at 215 (quoting *Burger King Corp. v. Rudzewidcz*, 471 U.S. 462, 472 (1985)).  Alternatively, general personal jurisdiction exists where "the nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause of action, are 'continuous and systematic.'" *Alpine View*, 205 F.3d at 215 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. at 415–416)); *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854 (5th Cir. 2000).

*The district court concluded that Rollins' contacts with Texas were continuous and* systematic and that, through these contacts, Rollins had purposely availed itself of the benefits and protections of Texas.  The language of the court's order indicates the exercise of general personal jurisdiction, so we will review its decision in that context.

Rollins argues that it has no contacts with Texas other than being the parent company of Orkin.  According to Rollins, because "the mere existence of a parent-subsidiary relationship will not support the assertion of jurisdiction over a foreign parent," *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990), a district court in Texas cannot exercise personal jurisdiction over Rollins simply because Rollins owns Orkin.  Although Rollins correctly states the general rule, there may be times where the parent corporation so dominates its subsidiary that the two cannot be considered separate and distinct entities. *Dalton*, 897 F.2d at 1363; *Hargrave v. Fireboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983)); *Walker v. Newgent*, 583 F.2d 163, 167 (5th Cir. 1978), *cert. denied*, 441 U.S. 906 (1979).  Where the parent corporation is merely the "alter ego" of its subsidiary, a court can impute to the parent it subsidiary's contacts with the

-8-

forum state for the purposes of establishing personal jurisdiction. *Dalton*, 897 F.2d at 1363; *Hargrave*, 710 F.2d at 1159; *Walker*, 583 F.2d at 167.

An alter ego relationship between a parent corporation and its subsidiary is based on control, but our case law has not clearly articulated the amount of control necessary to establish such a relationship. *Hargrave*, 710 F.2d at 1159. Generally, there must be "proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes." *Id*. at 1160. Although the assessment should be based on the totality of the circumstances, *Alpine View*, 205 F.3d at 218; *Grundle Lining Constr. Corp. v. Adams County Asphalt*, 85 F.3d 201, 209 (5th Cir. 1996), this Court has considered the following factors to be relevant in determining whether a parent's control will allow alter ego jurisdiction: (1) whether the parent owns 100% of the subsidiary's stock; (2) whether the two corporations maintain separate headquarters; (3) whether the parent and subsidiary share common officers and directors; (4) whether corporate formalities are observed; (5) whether separate accounting systems are maintained; (6) whether the parent exercises complete authority over general policy; and (7) whether the subsidiary exercises complete authority over daily operations, including research and development, marketing, and supply. *Dalton*, 897 F.2d at 1363 (citing *Hargrave*, 710 F.2d at 1160)). Of course, "[i]t should be noted that the alter ego test for attribution of contacts, *i.e.*, personal jurisdiction, is less stringent than that for liability." *Stuart v. Spademan*, 772 F.2d 1185, 1198 n.12 (5th Cir. 1985); *Reul v. Sahara Hotel*, 372 F.Supp. 995, 997 (S.D. Tex. 1974).

In its findings of fact, the district court noted several facts that would indicate an alter ego relationship, and only a few are required here to illustrate its point. Orkin and Rollins share thirty-

two common business departments. At the end of each business day, all money from Orkin's branch offices are "swept" into a Rollins bank account. Rollins pays expenses for Orkin, including its payroll. The parent exerts control over the subsidiary's ability to hire outside companies. They have shared benefits plans, as well as consolidated financial statements and income tax returns. They share some officers and directors. Finally, the whole purpose of the FOCUS project was to unify Orkin's operations so that they could be more closely monitored by Rollins. Based on these findings, we conclude that the district court's exercise of personal jurisdiction over Rollins was proper.

Even where there is a jurisdictional determination, this Court will review a district court's findings of fact for clear error only. *Kelly*, 213 F.3d at 845 (citing *Robinson v. TCI/US West Cable Communications, Inc.*, 117 F.3d 900, 904 (5th Cir. 1997)). The only finding of fact with which Rollins takes issue on appeal is the district court's finding that Rollins has advertised Orkin's services in Texas. However, there is an abundance of other findings by the district court that tends to support alter ego jurisdiction, making the resolution of the factual dispute concerning Rollins' (or Orkin's) advertising inconsequential to our decision on the issue. We simply will not engage in an unnecessary clear error review.

Rather than challenging the district court's remaining findings of fact, Rollins argues that, despite all other factors, it has made painstaking efforts to maintain an identity separate from Orkin. Rollins attempts to compare itself to the parent company in *Dalton* and asks this Court to refuse alter ego jurisdiction here as it did in that case. Certainly there are similarities between Rollins and Midland, the parent corporation in *Dalton*. Midland owned 100% of its subsidiary, as Rollins owns 100% of Orkin. Like Rollins, Midland "swept" its subsidiaries' moneys into its own

-10-

accounts, shared benefits plans with its subsidiaries, and consolidated tax returns. 897 F.2d at

1363.  Still, when we held that Midland was not the alter ego of its subsidiary, we held that "these

factors [were] outweighed, *albeit modestly*, by the fact that Midland observe[d] corporate

formalities, [made] its subsidiaries responsible for daily operations including all personnel

decisions, and allow[ed] each subsidiary to keep its records and accounts in separate books and

file its own state tax return." *Id*. (emphasis added).

Nonetheless, *Dalton* is distinguishable from the present case.  The facts that only modestly

outweighed the factors favoring alter ego jurisdiction in *Dalton* are not present here.  Among

other things, Midland did not control its subsidiaries' ability to hire outside companies.  It did not

share thirty-two common business departments with its subsidiaries.  Most strikingly, it did not

negotiate contracts on behalf of its subsidiaries, especially contracts for software that would later

allow Midland to more closely monitor its subsidiaries' operations.  Because *Dalton* is

distinguishable from the present case, the district court's exercise of general personal jurisdiction

over Rollins is entirely consistent with that decision.

**B**

Because we conclude that Rollins' contacts with the State of Texas are sufficient to create

general personal jurisdiction, an examination of the district court's specific jurisdiction is

unnecessary.  Nonetheless, we must still contend with the second due process requirement for the

proper exercise of personal jurisdiction—whether the exercise offends "traditional notions of fair

play and substantial justice." *Wilson*, 20 F.3d at 647; *Panda Brandywine*, 253 F.3d at 867; *Alpine

View*, 205 F.3d at 215.

First, Rollins argues that the district court failed to consider this fairness issue in its

temporary injunction order and that its failure to consider the issue was reversible error.  We

disagree.  Even if we accept Rollins' premise and assume without deciding that the district entirely

failed to consider whether its exercise of personal jurisdiction would offend traditional notions of

fair play and substantial justice,[4] Rollins' conclusion does not follow.  "It is firmly established that

an appellate court must affirm the lower court's judgment if the result is correct even though it is

based upon an improper ground." *Stegmaier v. Trammell*, 597 F.2d 1027, 1038 (5th Cir. 1979);

*Delhomme Indus., Inc. v. Houston Beechcraft, Inc.*, 735 F.2d 177, 185 n.12 (5th Cir. 1984).

Thus, if we decide that the district court's exercise of personal jurisdiction did not offend

traditional notions of fair play and substantial justice, its alleged failure to consider the issue itself

is immaterial.

When reviewing the fundamental fairness issue of personal jurisdiction, the court must

examine five factors: "(1) defendant's burden; (2) forum state's interests; (3) plaintiff's interest in

convenient and effective relief; (4) judicial system's interest in efficient resolution of controversies;

and (5) states' shared interest in furthering fundamental social policies." *Irving v. Owens-Corning

Fiberglas Corp.*, 864 F.2d 383, 387 (5th Cir. 1989); *Asahi*, 480 U.S. at 113; *World-Wide

Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

Rollins first contends that defending itself in Texas would be unduly burdensome. We

disagree for three reasons.  First, this appeal concerns the district court's temporary injunction

order, the only order appealable under 28 U.S.C. § 1292 (a)(1).  We are not concerned here with

Rollins' ability to defend itself against the underlying litigation.  The underlying litigation is beyond

---

[4] This assumption is made all the more difficult by the district court's treatment of the issue in its Order denying Rollins' Motion to Dismiss for lack of personal jurisdiction, an order made only days before. *See* R. at 669.

-12-

our appellate jurisdiction. That said, an injunction issued by a court in Texas should be no more difficult to follow than an injunction issued from any other state in the Union.

Second, even if we were concerned with the underlying litigation, Rollins' contention rests solely on the facts that the contract was negotiated, executed, and partially performed in Georgia and that the FOCUS computer systems are also in Georgia. Rollins underestimates the amount of burden required to offend fundamental fairness. In *Asahi*, the Supreme Court determined that it would unduly burden a Taiwanese manufacturer to cross the Pacific Ocean to defend an indemnification claim asserted against it by another Taiwanese corporation. 480 U.S. at 114. Here, the burden is far less. By merely asserting that another forum would be more convenient, Rollins would have us find an offense of fair play and substantial justice. While the level of burden required has not been clearly articulated, it is certainly more than Rollins contends.

Third, Rollins has been involved in so much litigation in the State of Texas, it is difficult for us to understand how litigating this case in Texas presents any additional burden. *See* R. at 578–607.[5] This is sufficient to offset Rollins' claim that subjecting it to personal jurisdiction in Texas would be unduly burdensome.

With respect to the forum state's interests, Rollins contends that Texas has no interest in the outcome of this litigation between private parties. Rollins ignores the fact that one of the private parties here is a Texas citizen. According to *Asahi*, California's legitimate interest in the dispute was greatly diminished because the plaintiff was not a California citizen. 480 U.S. at 114.

_____

[5] It should also be noted that Rollins filed two actions in Texas state courts in which it claimed to be doing business as Orkin Pest Control. *Rollins, Inc. d/b/a Orkin Pest Control and Rollins Protective Service v. Macho*, No. 94-1176, 68th Judicial Dist. Ct., Dallas County, Texas; *Rollins, Inc. d/b/a Orkin Pest Control and Rollins Protective Service v. Macho*, No. 90-11980, 162d Judicial Dist. Ct., Dallas County Texas.

Here, however, Plaintiff *is* a citizen of the forum state, giving that state at least some interest in the dispute. Further, the temporary restraining order—and the litigation generally—concerns contracts that are to be governed by Texas law. Texas has an interest in having its laws interpreted and applied to these contracts by its courts.

The three remaining factors have little bearing on the fundamental fairness of personal jurisdiction in this case. As Rollins points out, DPS does have an opportunity to obtain relief beyond Texas, but that does not diminish its interest in obtaining convenient and effective relief in Texas. Conducting this litigation in Texas would not conflict with the judicial system's interest in efficient resolution of controversies or the states' shared interest in furthering fundamental social policies. Thus, we conclude that the district court's exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice.

Because it has satisfied the two due process requirements, we hold that the district court properly exercised general personal jurisdiction over Rollins.

**IV**

We now turn to the district court's decision to grant a preliminary injunction in favor of DPS. In order to grant a preliminary injunction the court must draw four conclusions from the facts: (1) there must be a substantial likelihood of success on the merits of the plaintiff's claim; (2) there must be a substantial threat that plaintiff will suffer irreparable injury if the injunction is denied; (3) the threatened injury must outweigh any damage that the injunction might cause defendants; and (4) the injunction must not disserve the public interest. *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 285 (5th Cir. 1999); *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 265 (5th Cir. 1999). In its temporary injunction order, the district court

-14-

drew each of the foregoing conclusions, and Appellants argue that each was an error.

This Court reviews a district court's decision to grant a preliminary injunction for an abuse of discretion. *Shalala*, 164 F.3d at 284; *Sugar Busters*, 177 F.3d at 264. When performing this review, the district court's findings of fact are examined for clear error, but its conclusions of law are reviewed *de novo*. *Shalala*, 164 F.3d at 284–85.

### A

"To determine the likelihood of success on the merits, we look to the standards provided by the substantive law." *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997); *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990). As the temporary injunction was meant to protect DPS's claim for tortious interference, and as the contract underlying that claim is to be governed by the laws of Texas, we look to Texas law for guidance on the merits of DPS's tortious interference claim. Under Texas law, the plaintiff must demonstrate the following four elements to maintain a cause of action for tortious interference with an existing contract: (1) There existed a contract subject to interference; (2) The act of interference was willful and intentional; (3) The act of interference was a proximate cause of plaintiff's damage; and (4) Actual damage or loss occurred. *Prudential Ins. Co. of Am. v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *see also Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Discount Cntrs., Inc.*, 200 F.3d 307, 316 (5th Cir. 2000) (applying Texas law).

Appellants argue that DPS will not succeed on the merits of its tortious interference claim because there is no contract subject to interference. According to Appellants, the restrictive covenants contained within DPS's subcontractor agreements with Erhart and Zhou are more

restrictive than necessary and, therefore, unenforceable under Texas law.[6]

The Texas Supreme Court has provided the following three-part test to determine whether

an agreement not to compete is reasonable:

> First, it must ancillary to an otherwise valid contract, transaction or relationship. . .
> . Second, the restraint created must not be greater than necessary to protect the
> promisee's legitimate interests such as business goodwill, trade secrets, or other
> confidential or proprietary information. . . . Third, the promisee's need for the
> protection given by the agreement must not be outweighed by either the hardship
> to the promisor or any injury likely to the public.

*Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 386 (Tex. 1991) (citations omitted).

Appellants contend that the non-competition agreements at issue fail the second part of the test

because they do not contain a territorial limit and because they are too broad in scope. However,

Texas law does not require such a territorial limit. It merely requires that non-competition

covenants be no greater than necessary to protect a party's legitimate interests.

The district court found that DPS's subcontractors could not work on the FOCUS project

for Appellants without divulging trade secrets and confidential, proprietary information that

belonged to DPS. Although Appellants challenge this finding as clear error, we are not moved by

their argument. According to Appellants, the former subcontractors could not have divulged any

trade secrets or proprietary information possessed by DPS because, under the Professional

Services Agreement, DPS did not own any such information. However, nothing in the

Professional Services Agreement divests DPS of the knowledge of its own methodologies,

---

[6] Appellants also argue that, despite the Texas choice-of-law provisions contained within the contracts, Georgia law should apply. As a conclusory statement unsupported by any legal authority, we ignore the contention. *See Oden v. Oktibbeha County*, 246 F.3d 458, 470 n.12 (5th Cir. 2001) ("[W]e do not consider issues that are inadequately briefed."); *Rutherford v. Harris County*, 197 F.3d 173, 193 (5th Cir. 1999) (same).

processes, and business practices. The agreement may have provided Rollins with exclusive ownership of the software, and it may have obliged DPS to protect the confidentiality of Rollins' records. Nevertheless, DPS still maintains its own trade secrets and proprietary information, and Appellants have not convinced us of any clear error on the part of the district court.

Texas law merely requires a reasonable scope for a covenant not to compete, and the district court concluded that the non-competition agreements were reasonable given DPS's legitimate interest. We find no clear error with the district court's finding of fact and no error with its application of Texas law.

With respect to the second element of the tortious interference claim, that the act of interference must be willful and intentional, Appellants contend that they never solicited or hired Erhart or Zhou. However, in their own brief, Appellants claim that "Rollins and/or Orkin desired to employ the services of Zhou and Erhart to help repair the and complete the FOCUS." Appellants' Br. at 9. They further note that "[i]nitially, Zhou and Erhart both indicated that they would be available to assist Rollins and/Orkin to complete the project on which they had worked, but were hesitant to accept employment with Rollins for fear of violating their agreements with DPS." *Id*. Finally, Appellants went so far as to obtain a state court temporary restraining order preventing the enforcement of the non-competition agreements in Georgia. *See Orkin Exterminating Co., Inc. v. DP Solutions, Inc.*, No. 01100945-18, Super. Ct., Cobb County, Ga., Feb. 5, 2001. Given these facts, we find Appellants' argument unpersuasive.

In their final argument regarding the substantial likelihood of DPS's success on the merits, Appellants contend that because DPS cannot prove that it suffered actual damages, the existence of which being shown with reasonable certainty, it cannot succeed on a claim of tortious

-17-

interference with a contract. This argument ignores the fact that Texas law will allow injunctive relief where legal damages cannot be measured with a sufficient degree of certainty. *See Graham v. Mary Kay, Inc.*, 25 S.W.3d 749, 753 (Tex. App.—Houston 2000, writ denied) (internal quotations and citations omitted) ("[U]nder Texas law, actual damage is not required [if] . . . the employer can provide proof of 'probable injury.' . . . [and can] show a noncompensable injury for which there can be no real legal measure of damages, or none that can be determined with a sufficient degree of certainty."); *Martin v. Linen Sys. for Hosps., Inc.*, 671 S.W.2d 706, 107 (Tex. App.—Houston 1984, no writ) (noting that the applicant for a temporary injunction must show a noncompensable injury for which there can be no real legal measure of damages, or none that can be determined with a sufficient degree of certainty); *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 577 (Tex. App.—Austin, 2000, no writ) (same). As an equitable remedy, the temporary injunction is used where damages cannot be measured with certainty. To hold that DPS is not entitled to this equitable relief because it cannot sufficiently quantify its legal damages would be absurd.

**B**

Appellants' remaining arguments with respect to the merits of the district court's temporary injunction order are merely recycled versions of the arguments already employed to persuade us that DPS had not demonstrated a substantial likelihood of success on the merits of its tortious interference claim. We were not persuaded by them then, and we are not persuaded by them now. On the merits, we find no error with the district court's decision to grant a temporary injunction in favor DPS, and we certainly do not find that the court abused its discretion.

**V**

-18-

In their final assignment of error, Appellants argue that the district court violated the Anti-Injunction Act by issuing a temporary injunction in direct contravention to the order previously issued by the Superior Court of Cobb County, Georgia.  The Anti-Injunction Act prohibits a federal court from granting an injunction to stay proceedings in a state court "except as expressly authorized by an Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.  Although, Appellants' argument is flawed for a number reasons, we decline to address the merits of the issue as it has become moot.  Through removal and transfer, the action that began in a Georgia state court is now pending in a federal court sitting in Texas. *See Orkin Exterminating Co., Inc. v. DP Solutions, Inc.*, No. 9:01-CV-00331 (E.D. Tex. Dec. 20, 2001).  Thus, there is no longer any proceeding in state court to be stayed, and any decision we reach on the merits of Appellants' final argument would be unnecessary.

## VI

For the foregoing, we AFFIRM the district court's Temporary Injunction Order.