**Curtis B. ORLOFF, Plaintiff,**

v.

**SAIPEM, INC., Defendant.**

**Civil Action H–02–4815.**

United States District Court,
S.D. Texas.

Aug. 8, 2003.

James P. Lambert, Lafayette, LA, for Plaintiff.

Scott A. Humphries, Houston, TX, for Defendant.

Opinion

HUGHES, District Judge.

**1.** *Introduction.*

A worker from Louisiana sued a Texas subsidiary of an Italian corporation for his injuries on a drilling rig in Saudi Arabia. The rig was operated by a Saudi subsidiary of the parent company in Italy. After having been allowed discovery, his claim fails because the company he sued has no connection to his injuries and because his indirect complaint against the parent is wrong. If he had a viable claim, this is an inconvenient forum.

### 2. Background.

In December 2001, Curtis Orloff was working on a drilling rig in the Quatif Field in Saudi Arabia. He was an employee of Halliburton Energy Services, Inc. Orloff was severely hurt when a drill collar fell off a forklift onto his leg. After his injury, he returned to the United States, where he lives in Louisiana.

Orloff sued Saipem, Inc., a Texas corporation, on the theory that it was responsible through its being owned by Saipem S.p.A., an Italian corporation. The Saipem companies involved are:

- *Saipem Italy.* Saipem S.p.A. of Milan, Italy, is an industrial concern that operates directly and through subsidiaries and joint ventures.
- *Saipem India.* Saipem Aban Drilling Co., (Saipem Drilling), an Indian corporation owned in part by Saipem Italy. It owned the drilling rig.
- *Saipem Saudi.* Saipem Italy through Saipem International owns 60% of Saudi Arabian Saipem, Limited, its subsidiary for operations in the Kingdom of Saudi Arbia. It was drilling the well.
- *Saipem Texas.* Saipem, Inc., is a Texas corporation in Houston, owned by Saipem Italy through Saipem International B.V. and through Sonsub Inc., with other subsidiaries.

In July 2001, Saipem India had bailed the rig to Saipem Italy. On the same day, Saipem Italy bailed it to Saipem Saudi. Saipem Saudi was using the rig to drill a well in Saudi Arabia, and it had hired Orloff's employer to help.

### 3. Claim.

Orloff naturally wants to recover for his injuries beyond Saudi Arabia's workers compensation and Haliburton's benefits. He asserts that Saipem Texas was negligent in its operation of the rig. He selected Saipem Texas, he says, because it is owned by Saipem Italy. Saipem Italy also owns the company that owned the rig, and it owned a majority of the company that hired and operated it.

Orloff contends that the forklift operator and toolpusher—the rig foreman—worked for Saipem Italy; the only evidence is that the people operating the rig were employees of Saipem Saudi or contractors like Haliburton and Sperry Sun. Orloff simply collapses all Saipem companies into one, with Saipem Texas being equally responsible for the liabilities of every Saipem entity.

Orloff makes no claim that the rig was defective.

### 4. Equipment Bailment.

The transfer of the rig's possession for hire from Saipem India to Saipem Italy and from it to Saipem Saudi is unconnected to the injury and to the involvement of Saipem Texas. Orloff's claim is based entirely on the careless operation of the equipment, not on its condition. As a business transaction, it shows that the parent and subsidiaries dealt with each other, but this dealing is a contextual datum without bearing on the role of Saipem Texas.

### 5. Corporate Biography.

Orloff asked that he be able to explore the relations between the Saipem companies before the motion to dismiss was heard. He deposed an employee of Saipem Texas. After the deposition, Orloff moved to amend the complaint to include his related entity theory of liability. This procedural twitch would have replaced—at greater length—the original complaint's allegation that Saipem Texas was a wholly-owned subsidiary of Saipem Italy and, therefore, liable for its acts. The third paragraph of the complaint says that. The proposed amended complaint has several

pages of data about Saipem Texas and its relation to its parent and about Saipem Italy's acts in the United States.

The corporate biography of Saipem Texas is not unusual. Saipem Italy created and funded it through another wholly-owned subsidiary, Saipem International B.V. In 2001, the subsidiary of Saipem International called Sonsub Inc. held Saipem Texas. Saipem Italy operates in nearly 30 countries through wholly-owned subsidiaries, partially-owned subsidiaries, joint ventures, and branches.

After Saipem Texas was incorporated, Saipem Italy withdrew its registration with the Texas secretary of state, and Saipem Texas moved into its former office space. At its inception, Saipem Texas shared some directors with Saipem Italy. Orloff contends that the financial dependency and shared directors justifies disregarding Saipem Italy's corporate independence.

Orloff should have proved that Saipem Saudi was insubstantial because it was the company that did him wrong; if Orloff could establish that Saipem Saudi had injured him and that it was unable to satisfy the judgment, then he might seek to enforce it against Saipem Italy. The plaintiff has sued one sister for the wrongs of another sister as a way to attack the mother. The sister in Texas is not her mother in Italy, much less is she her sister in Saudi Arabia.

6. *Connection.*

The amended complaint was not allowed before the case was transferred here. Taking the expansion of the complaint as accepted, he has shown no facts that under Texas law would permit the corporate distinction between Saipem Texas and Saipem Italy to be disregarded.

■ Before the responsibility on a corporation may be shifted from it to another person or company, the law requires that the corporate form have been used deceitfully. The essence of the multi-part rules about when a court should attach responsibility up the route of ownership is that an insubstantial corporate operation risks its owners having to bear its costs.

Limiting liability is the nature of the corporation; in itself that cannot be a reason to void the distinction. *See* John Micklethwait & Adrian Wooldridge, *The Company: A Short History of a Revolutionary Idea* (Modern Library, 2003). That its economic utility has been accepted is shown by the statutes in places as diverse as Texas and Saudi Arabia that permit limitation of liability through several forms.

■ Dividing an operation into components and incorporating each of them is not deceit. Contracting with third parties to supply the goods and services a corporation is obliged to furnish is not deceit. Even impecuniosity is not deceit.

He mentions acts of Saipem Italy in America in the 1990s. He mentions Saipem Italy's indirect ownership of a vessel that is or was working in the Gulf of Mexico for Exxon. He mentions that Saipem Texas is limited to engineering evaluations for projects that usually end up being under a contract with another Saipem company and some third party. He mentions that many Saipem companies have common directors.

He mentions that Saipem Italy uses its subsidiaries to limit its liability and to increase it profits. That is belaboring the obvious; that is why there are corporations and subsidiary corporations. Orloff offers data on Saipem companies' finances, drilling projects, directors, officers, office equipment, and registrations to show the intimate relationships between them.

None of Orloff's structural or operational facts supports an abuse of the corporate form. Saipem Texas has its own workers and contracts.

Orloff contends that the employees of the parent, Saipem Italy, are agents of the subsidiary, Saipem Texas, making the subsidiary liable. He has the inferior responding where the superior should be. He only knows that two workers in Saudi Arabia could have been negligent to his injury. He knows of no act that either of those people did on behalf of Saipem Texas in connection with his accident or in general. The agency of ordinary workers is limited.

On the *assumption* that Saipem Italy employed the toolpusher and forklift operator, Orloff is no better off trying to get from the parent to the Texas subsidiary because these agents were hypothetically acting for Saipem Italy—not for Saipem Texas—by Orloff's own version of the facts.

Orloff has not pleaded a related theory of liability; He has no claim or evidence, for instance, that Saipem Texas ordered, trained, employed, or supervised the forklift operator or toolpusher.

### 7. *Capital & Formalities.*

Orloff has no data that other aspects of these corporations make their independence voidable. Although he talks a lot about finances, he does not show that Saipem Texas is under-capitalized. On the contrary, he shows that Saipem Texas earned $30,470,129 in 2000; one-half of it was transferred to its shareholder. The remaining revenue—along with $4 million of tangible assets—could certainly cover Orloff's claim against any Saipem. Orloff has no claim against Saipem Texas; his claim is against Saipem Texas only as an agent of Saipem Italy.

He has shown that Saipem Italy uses its human and financial capital in a variety of business organizations. He has not shown that these organizations are without substance or that they do not adhere to the procedures for their type. He has shown that Saipem Italy changes the corporate vehicles it employs in its worldwide business. He has shown not one of them to be a mirage.

### 8. *Jurisdiction.*

Orloff obviously sued Saipem Texas for his jurisdictional convenience. The correct party is in a foreign country, complicating the process of suing it. Worse than distance, Orloff is faced with a claim arising in Saudi Arabia under Saudi law.

If Saipem Italy has a general presence in America, Orloff could sue it here. He chose not to sue it, so the question whether this court would have jurisdiction over it is moot. Orloff never asked for leave to add Saipem Italy. He rested his case on his appreciation that Saipem Texas is liable for Saipem Italy generally. He implicitly must also be asserting that Saipem Texas is directly liable for Saipem Saudi. He has not pleaded anything about the relation between Saipem Saudi and Saipem Texas or Saipem Italy, making it not part of the collapsed corporation. This would leave Orloff without a claim no matter what was done with the other companies.

■ A subsidiary's doing business in a particular state does not ordinarily confer jurisdiction over the foreign parent, regardless of the financial relationship. *See* William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 43.70 (Perm. ed.1999); *Dalton v. R & W Marine, Inc.,* 897 F.2d 1359, 1363 (5th Cir.1990). Ownership and owner's control of a corporation do not permit the "corporate" jurisdiction to exercise judicial power over the owners.

*Assuming* the forklift operator and tool-pusher were negligent agents of Saipem Italy, Orloff should have sued that company in Italy or Saudi Arabia. Alternatively, he could have sued Saipem Italy and Saipem Saudi here, served them with process, and established jurisdiction of them on the actual facts of their activities.

### 9. *Convenience.*

■ The accident happened in Saudi Arabia. The witnesses are from around the world. The company operating the equipment negligently is a Saudi company. Saudi law would apply. That location is reasonable in light of Orloff's decision to earn his living in that country. This is not an adventitious location, like the Nebraska crash site of a Florida–to–Utah flight.

If Orloff had sued Saipem Italy, the action would be dismissed for its having been brought in an inconvenient forum.

### 10. *Facts & Unfairness.*

Orloff has pleaded the essential facts of the accident. He has pleaded a few facts about the relationship between the tool pusher and forklift operator, for instance, that have been contradicted by sworn specifics. His gratuitous assertions cannot survive sworn specifics and his failure to develop readily available information about the accident. Most of the data about Saipem is available in the public library or on the Internet. Much of the specifics about the accident were available to Orloff from his employer.

Some discovery was permitted, including a deposition of Saipem Texas. The record has affidavits. The facts that are known about the justiciability of the accident here with these parties confound Orloff. This state of the case makes it compelling to convert the request to dismiss into a judgment as a matter of law.

Orloff may not have freely chosen the company that injured him, but he chose to work in a foreign country, earning a premium over the same work in the United States. One disincentive for an American working abroad is that he does not have the advantages of American life, including its courts and law. He may not restructure the deal he made by moving his legal claims to the United States.

### 11. *Conclusion.*

Although this review started on the motion to dismiss, the parties have supplemented the record beyond the pleadings, converting this to a summary judgment. Saipem, Inc., is not liable to Orloff directly because it had no connection to the accident where he was injured. Saipem, Inc., is not liable to Orloff for his injuries through its relationship to Saipem S.p.A. If jurisdiction attached to Saipem Italy through Saipem Texas for this accident, this court would be an inconvenient forum.